479 A.2d 485

**Lisa H. (Keller) BEAMER, Appellant,**

v.

**Thomas Richard BEAMER.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1984.

Filed June 1, 1984.

Grace D'Alo, Carlisle, for appellant.

Ronald J. Hagarman, Gettysburg, for appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

WICKERSHAM, Judge:

This is an appeal from the order of the Court of Common Pleas of Adams County dismissing, *inter alia,* appellant's exceptions and appellant's petition to open her divorce decree. We affirm in part and reverse in part.

Appellant is Lisa Keller, the ex-wife of appellee, Thomas Beamer.[1] The parties were married in August 1973, and separated six years later. Appellant filed for divorce under the now repealed Divorce Law on June 27, 1980. She was permitted by order dated September 9, 1980, to proceed under the new Divorce Code, 23 P.S. § 101 *et seq.* Both

---

1. Appellant filed a notice of election to retake her maiden name, Keller, in August 1981.

parties filed inventories pursuant to Pa.R.C.P. 1920.33 and the court appointed a Master to take testimony on the disputed marital property, both personal and realty.

Two hearings were held before the Master in February 1981. The majority of the testimony concerned the realty, a house situated on approximately one acre of land in Menallen Township, Adams County. Appellee contended that the realty was not marital property, but his property alone, acquired before the marriage; appellant took the opposite viewpoint. At the beginning of the first hearing, the parties entered into a stipulation concerning certain items of personal property[2] and after some discussion, the Master surmised that the sole subject matter before him concerned the real estate. (N.T. Master's Hearing, February 4, 1981, at 4–6). This realty was acquired by appellee, with some financial aid from his father, shortly before the marriage. Construction of the house was also begun before the marriage. After the marriage, construction of the house continued, and the parties lived in the house for about five years prior to separation. The real estate was at all times titled in the sole name of the appellee, while the three succeeding mortgage loans were taken in both parties' names. The fair market value of the real estate at the time of the Master's Hearing was found to be $59,500.00.[3]

The Master filed his report on February 25, 1981. The report stated that the real estate distribution had been the sole matter before the Master, and therefore, he made no

2. The personal property stipulated to at the February 4, 1981 Master's Hearing consisted of the following: a wood stove, family room furniture, a stereo unit, a motorcycle, a 1973 Porsche, a set of dishes, silverware, ten pictures, a sewing machine, a vacuum cleaner, a coffee table, and end tables. These items were only a part of the total personal property owned by the parties at the time of the divorce proceedings.

3. Appellant testified that the value of the real estate was $58,000.00 (N.T., Master's Hearing, February 4, 1981, at 28). Appellee testified that the value was $51,000.00 (N.T., Master's Hearing, February 4, 1981, at 83). The lower court accepted the Master's finding of $59,-500.00 value, based upon the testimony of the real estate broker hired to list the property for sale. (N.T., Master's Hearing, February 4, 1981, at 107).

recommendations relating to the personal property. The Master recommended an equal distribution of the real estate, which resulted in a share of $10,182.42 for each party.[4] Appellee filed exceptions to the Master's report, but he eventually withdrew them. The parties were divorced on July 23, 1981, and on August 10, 1981, the lower court entered a decree adopting the Master's recommendations, including the above distribution of the real estate, and ordered appellee to pay costs. An amendment to this order was entered three (3) days later, which provided that appellant's interest in the real estate would cease upon payment to her of $10,182.42 by appellee. Judgment was entered on the order.

Thus matters stood for ten (10) months. Then two events occurred: the house was completely destroyed by a fire, and the Master grew impatient for appellee to pay his fee. On April 21, 1982, the Master petitioned the court to attach any insurance proceeds that appellee was to receive, and direct payment of such proceeds into the court. The court did so. Several days later, appellant, who by this point had acquired different counsel, filed a petition to open and an application for special relief. She argued that since the court had awarded her a one-half interest in the marital property, and since her ex-husband had not yet paid her any of her share, her interest in the real estate had not ceased, and therefore, she was entitled to one-half of the insurance proceeds, which exceeded the value set by the Master by a significant amount. She also raised an argument concerning the personal property which had been destroyed in the fire. The parties had orally agreed to divide the personal property equally between them. However, at appellee's

4. The figure of $10,182.42 was derived from computations by the Master as follows:

| | | |
|---|---|---|
| $ 59,500.00 | Value of real estate at time of hearing | |
| − 23,609.11 | Liens to be excluded | |
| − 7,735.78 | Increase in value of appellee's interest prior to marriage | |
| − 7,982.18 | Pre-marital improvements to property | |
| − 6,351.00 | Gifts to appellee (by parents) | |
| + 6,542.92 | Increase in value after marriage | |
| $ 20,364.85 | Marital property | |
| $ 10,182.42 | ½ share | |

request, appellant left her share of the personalty in the residence in order to encourage a sale of the home. Unfortunately, the furniture was destroyed along with the house; therefore, appellant avers that she is entitled to one-half of the insurance proceeds attributable to the personal property.

The lower court responded by issuing a rule upon appellee to show cause why he should not be required to pay one-half interest in the proceeds to appellant. The matter eventually resulted in hearings on June 8, 1982, September 17, 1982, and November 8, 1982. The result of these hearings was, *inter alia*, a dismissal of the petition to open. The Prothonotary was ordered to release $10,182.42 of the insurance proceeds to appellant, the balance going to the mortgage-holder banks, the Master, the Prothonotary, and the appellee. Both parties excepted; these exceptions were dismissed on January 19, 1983. Appellant filed this timely appeal.

Appellant raises two issues before us:

I. If an insurance policy on marital property is issued in only one spouse's name, can the unnamed spouse recover an equitable share of the proceeds paid on that policy for personalty that was destroyed by fire when:

a) The policy covering the personalty was purchased after the marriage for both parties' benefit;

b) The policy premiums were paid for by both parties during the time they lived together;

c) There are other equitable reasons to allow the unnamed spouse to recover a share of the insurance proceeds on the personalty?

II. If an insurance policy on real marital property is issued in only one spouse's name but both spouses pay the premiums on the policy can the unnamed spouse recover an equitable share of the proceeds paid on that policy for realty destroyed by fire when:

a) Lisa Keller was entitled to one-half of the share of realty considered to be marital property;

b) The matter of realty was litigated as part of a divorce proceeding;

c) There are other equitable reasons to allow the unnamed spouse to recover a share of the insurance proceeds on the realty?

Brief for Appellant at 2. We view the issues more simply: should appellant get any share of the insurance proceeds for either the personal property left in the house, or for the house itself?

 In essence, this appeal presents the question of the extent to which a court can exercise its equitable powers under the Divorce Code to effect economic justice between the parties to a divorce. Due to the young age of our Divorce Code, there are few appellate cases on the equitable distribution section of the statute applicable to the present case. However, it has long been recognized by Pennsylvania courts that the door of equity is never closed. *In re Gerlach's Estate*, 364 Pa. 207, 72 A.2d 271 (1950). In particular, the courts have recognized that divorce is a special form of action in which the state is an interested third party and that there exists a duty to ascertain all pertinent facts. *Teriberry v. Teriberry*, 210 Pa.Super. 54, 232 A.2d 201 (1967). A petition to open a divorce decree is equitable in nature, *id.*, and is governed by equitable principles. *Roach v. Roach*, 275 Pa.Super. 320, 418 A.2d 742 (1980). Where equity requires that the decree be opened and additional testimony be taken, the court may, in its discretion, do so. *Nixon v. Nixon*, 329 Pa. 256, 198 A. 154 (1938); *Deussing v. Deussing*, 224 Pa.Super. 525, 307 A.2d 382 (1973). A petition to open a divorce decree for purposes of taking additional testimony is equitable in nature, and the court is obliged not only to review the record as a whole for legal error, but also to consider the record as a whole to determine the justice of the result. *Id.*

Under the new Code, the court has broad equitable powers to "protect the interests of the parties or to effectuate the purposes of this act," and the court may "grant such other relief or remedy as equity and justice require." 23

P.S. § 401(c). One of the purposes of the Code is to "[e]ffectuate economic justice between parties who are divorced or separated and ... insure a fair and just determination and settlement of their property rights." 23 P.S. § 102(a)(6). Appellant argues that, given this purpose, the court has the power to open the decree and to readjust her monetary award to effect a just and equitable division of the marital property.

We do not agree that opening the divorce decree is the correct solution to appellant's personal property problems. However, under the circumstances of this case, we feel that given the court's broad equitable powers, the imposition of a constructive trust on the insurance proceeds representing appellant's interest in those proceeds, is necessary. Appellant testified that she had been asked by appellee to leave items of personal property in the marital home so that the house would present a better appearance to any prospective buyers, (N.T., June 8, 1982, at 5–6). She produced a substantial list of items that were left in the house. Appellee stipulated that the list was correct. (N.T., June 8, 1982, at 8). She testified that all of these items were acquired after the marriage. (N.T., June 8, 1982, at 11–12). This list contained items that were not included in the inventory she filed before the master's hearing. Her testimony was corroborated by her father (N.T., June 8, 1982, at 36–38), and another witness (N.T., June 8, 1982, at 32–33).

Appellant testified that there was an oral agreement between the parties that the property remaining in the house would be split up in some equitable fashion after the house was sold. (N.T., June 8, 1982, at 4–5, 10–11, 17, 19, 21). Appellant's witness testified that she was present during a discussion between appellant and her trial counsel concerning the personalty, and that appellant told her attorney that the parties could work out the remaining personalty on their own. (N.T., June 8, 1982, at 31–32, 35). Appellant's trial counsel testified as to the same discussion. His memory of the event was basically that the Master's hear-

ing was to be spent on a discussion of the parties' real estate and that personalty would not be in issue before the Master. (N.T., June 8, 1982, at 6–7). The only issue they were concerned about was appellant's interest in the real estate, since it was that issue that was disputed. (N.T., September 17, 1982, at 9–10, 20). He asked appellant to draw up a list of her "assets and liabilities for the past three years"[5] (N.T., September 17, 1982, at 10, 23–25). While both appellant and her witness testified that counsel had indicated to appellant before the Master's hearing that it would require a lot of time to present evidence on the personalty and it would not be "worth it," counsel did not recall the exact contents of the discussion. (N.T., September 17, 1982, at 26–27).

On direct examination, appellee said that there was no agreement, but admitted on cross-examination that appellant had left personal property in the house at his request. (N.T., June 8, 1982, at 51). He stated that no division had occurred because the parties could not agree (N.T., June 8, 1982, at 55), but conceded that at least some of the property had been acquired during the marriage (N.T., June 8, 1982, at 53). He also stated that the value of the items left in the house was greater than the value of those items that appellant took with her upon separation. (N.T., June 8, 1982, at 54).

After examining the record, we agree with the lower court's findings of fact on June 8, 1982 that:

3. The matter of personal property except to the extent of the stipulations entered of record was not litigated.

4. The agreement of the parties as to the personal property not covered by stipulation was that the Petitioner would leave the items in the marital home and that at

5. Apparently, appellant took that request literally, because she drew up a list which contained only the items acquired in the last three years of her marriage (see footnote 2), and left out the major portion of the parties' earlier-acquired marital property.

the sale thereof the parties would agree as to a final distribution of those items.

We also agree with the court's conclusion of law on the same day that:

2. Petitioner has waived her right to litigate the marital distribution of the personal property by not incorporating it into the divorce proceeding.

This is in keeping with 23 P.S. § 401(j) which states:

(j) Whenever a decree or judgment is granted which nullifies or absolutely terminates the bonds of matrimony, any and all property rights which are dependent upon such marital relation, save those which are vested rights, are terminated unless the court otherwise expressly provides in its decree in accordance with subsection (b). All duties, rights, and claims accruing to either of said parties at any time heretofore in pursuance of the said marriage, shall cease. . . .

However, under the particular circumstances of this case, we believe that the trial court may proceed at equity to determine the value of the personal property of appellant that was in the possession of appellee at the time of the fire. It is obvious that the parties agreed to a distribution of the personal property and, further, the record supports the finding that some of the appellant's personal property was located in the home at the time of the fire.[6] For the

---

6. The home which the parties shared during their marriage was newly built and, with the exception of a few items, was entirely furnished with jointly owned property. All the rugs, curtains, appliances, and furniture were bought after the marriage. When appellant left the marital home, she took with her only those items of household furnishings she needed to minimally furnish her new apartment. Appellee asked her to leave as many items as possible because he was trying to sell the house and wanted it to look good for prospective buyers. She complied with his wishes with the understanding that if and when the home was sold they would divide the furnishings. There is nothing in the Master's Report or the lower court's opinions to suggest that appellant had removed all the items of personal property to which she felt she was entitled, as appellee contends. In point of fact, the only stipulation between the parties prior to the hearing which centered on the real estate was that each party would keep certain items already in their possession. Had appellant removed all the items that appellee suggests constitute half of the

irretrievable loss of this property, appellee received insurance proceeds. To allow appellee to retain these proceeds would be unjust.

Therefore, we believe that the matter should be returned to the trial court for the purpose of determining the value of appellant's personal property that was in the possession of appellee and destroyed by the fire. To that extent, appellant would be entitled to a recovery from the insurance proceeds representing the value of the property lost at the time of the fire.

■ Appellant also argues that equitable considerations require us to open the decree to "redistribute" the true value of the real estate. The Master determined that the value of the marital property, after deducting various amounts attributable to appellee's separate property rights, was $20,364.85, and the lower court awarded appellant $10,182.42, or half, as her share. Appellant entered judgment on this order. After fire destroyed the property, it was discovered by appellant that the house was insured for about $20,000.00 more than the value set by the Master. Appellant requests half of this increased value, in addition to the $10,182.42 awarded her by the lower court.

We do not find appellant's arguments as to the real estate as persuasive as her arguments concerning the personalty. The lower court made the following findings of fact and conclusion of law on June 8, 1982, with regard to the real estate:

## FINDINGS OF FACT

1. The order of August 13, 1981, was a final order to which no exceptions were taken.

2. The matter of the real estate was finally litigated and the Petitioner to this matter and the Plaintiff in the case in chief is bound by the terms of that order.

marital property, there hardly would have been over $26,000.00 worth of property left to insure.

## CONCLUSION OF LAW

1. Petitioner is bound by the order of August 13, 1981. We must agree with the lower court that "[w]hen parties have had an opportunity to litigate a matter, they generally are not given repeated opportunities to do so again." Lower ct. op., January 19, 1983, at 8–9. We have made an exception with regard to the unusual circumstances surrounding the personalty in this case. But unlike the personalty, the issue of the value of the real estate was fully and forcefully litigated. Both parties, appellant's witness, and appellant's trial counsel all testified that the focus of the Master's hearing was whether the real estate was marital property. Appellant did not except to the amount of her distribution, which leads us to believe that she was satisfied with that amount. Had it not been for the fire and the resulting realization that the real estate was insured for $20,000.00 more than the court-determined value of the property, appellant would probably have never questioned the amount of the distribution.

While we agree that, given the 50/50 split of marital property by both the Master and the lower court, it seems unfair that appellee benefits to a large degree by the destruction of the house, while appellant does not. However, where it appears that counsel energetically litigated the question of the value of the marital property and appellant willingly accepted the division and amount that was determined to be her equitable portion, the fact that the house burned down and the insurer paid a greater amount, thus making the earlier determination seem inadequate, is not enough to reopen a decree. If appellee had sold the house in February 1982 for $72,000.00, appellant surely could not reopen the decree based on an unforeseen sales price. We see little difference between that situation and the instant case in which appellee obtained $72,000.00 of insurance proceeds due to an unforeseen fire.[7]

7. The August 13, 1981 order provided that once appellee paid appellant $10,182.42 in full satisfaction of her marital share of the real estate, her interest in the realty would cease. We note that as of the

We reverse the order of the lower court, but only in regard to the personal property, and we remand to the court below to (1) hold an evidentiary hearing to determine the extent of appellant's personal property destroyed in the fire which the husband held and (2) impose a constructive trust on the insurance proceeds to that extent, in favor of appellant. In all other aspects the order of the lower court is affirmed.

Order reversed and remanded in part and affirmed in part. Jurisdiction is relinquished.

dates of the fire and of the petition to open, appellee had paid appellant nothing. Arguably, her rights to the marital real estate had not been extinguished. However, we do not find that this fact compels a different conclusion. Also, we note that the appellee and the lower court rely on *McDivitt v. Pymatuning Mutual Fire Insurance Co.,* 303 Pa.Super. 130, 449 A.2d 612 (1982), which holds that the proceeds of a fire insurance policy payable on property held in tenancy by the entireties is not due necessarily to both spouses when the policy was issued in the name of, and the premiums were paid by, only one spouse. Nevertheless, we distinguish *McDivitt* from the instant case since *McDivitt* did not involve the Divorce Code or the concept of marital property.