**Cropper v. Cropper**

*Franklin J. Seyfert*, for plaintiff.
*David A. Ody*, for defendant.

KURTZ, *J.*, November 23, 1993—This court has been asked by Shirley Cropper to increase the amount of permanent alimony she receives from her former husband, Robert Cropper. Presently Mr. Cropper is obligated but not inclined to pay $600 per month to Mrs. Cropper. We held a hearing on October 4, 1993 and each side has submitted a memorandum of law in support of its position on the issue of modifying the amount of alimony.

The genesis of this proceeding was the final decree in divorce which was entered December 23, 1992. That decree divorced the parties, directed Mr. Cropper to pay $600 per month as permanent alimony, and distributed the marital assets in accordance with a plan recommended by Robert B. Stewart III, Esquire, the master appointed February 12, 1992, a plan to which neither party excepted. Our view today is that Mr. Cropper had a plan of his own which he put into operation even before the decree, a plan intended to defraud his wife, his creditors, this court and a United States Bankruptcy Court in the State of Texas.

The divorce master held hearings on February 17, 1992, March 10, 1992, and April 16, 1992. At those hearings

it was not disputed that Mr. Cropper retired in 1987. He had been a tanker captain and his monthly retirement income of $1750 was a reflection of the income he had earned, and was capable of earning. The master used this income figure in determining the amount of alimony. But the fact is that in May 1992, a month after the conclusion of the distribution hearings, Mr. Cropper returned to work as a consultant for International Marine Consultants Inc., in Corpus Christi, Texas. He testified and documentary evidence was introduced at the October 4, 1993 hearing that verified that Mr. Cropper was paid a salary of $45,000 in 1992, and $50,000 in 1993. We will have more on this fact later. In any event, the fact of Mr. Cropper's employment and his substantial income was not reported to or considered by the master.

The report of the master divided the marital assets of the parties. Mrs. Cropper received the marital residence and its furnishings. Mr. Cropper received his pension and other assets including real estate, an I.R.A., and personal property. The total value of the assets set aside to Mr. Cropper by the December 23 decree was $125,485 with the pension being valued at $49,457. Thus $76,000 in real estate, cash, and personal property found its way into Mr. Cropper's possession. However, to equalize the position of the parties, he was directed to pay to Mrs. Cropper the sum of $68,485. This directive literally and figuratively went south quickly as Mr. Cropper filed a voluntary petition under Chapter 7 of Title 11, U.S.C. in United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division on March 28, 1993. In his petition, Mr. Cropper listed total unsecured debt in the amount of $78,686 with Mrs. Cropper the principal

creditor. As a demonstration we believe of his complete disdain for the divorce process, he also listed as creditors the master to whom he owed $717 and the court reporter to whom he owed $217. Significantly, not a single asset that Mr. Cropper received as a result of the December 23 decree found its way onto Mr. Cropper's petition in the bankruptcy court. As noted, all of his obligations were listed, indeed they comprised almost the total of liabilities.

We understand part of Mr. Cropper's omissions from his Chapter 7 proceeding. Ten days prior to filing his Texas bankruptcy, the records of Huntingdon County reflect that he transferred to his brothers and sisters, for nominal consideration, all of his real estate. Hence, he could with an almost straight face list no real estate assets on schedule A of the bankruptcy petition. However, it's beyond belief that a man earning $50,000 a year could dissipate to zero within three months the $78,000 in assets turned over to him as a result of the divorce. Yet, on schedule B of his bankruptcy petition, Mr. Cropper stated that he had no assets save a vehicle that was not a part of the divorce proceedings. No cash, no savings, no checking account is what schedule B lists under the heading of personal property. Curiously, at hearing, Mr. Cropper testified that subsequent to his filing the bankruptcy action, this assetless individual was able to pay $11,000 down on the purchase of a $54,000 home.

It gets worse. Schedule I of the Chapter 7 petition asks the debtor to list his current income and it is here that Mr. Cropper demonstrated remarkable resolve in his plan to deprive his former wife of any benefit of their long marriage. Without concern, since Mr. Cropper knew that the principal creditor listed in this scam lived thou-

sands of miles away and was too poor to be even able to pay her mortgage much less contest a bankruptcy action, he listed as his net monthly income the sum of $1197. The truth is that during 1993 Mr. Cropper's net monthly income has been $5437.70. He receives $1753.02 a month from his retirement, and $1697.84 biweekly from International Marine Consultants Inc. In addition, he told this court that he receives $389 a month from an I.R.A.

Mr. Cropper's performance with respect to his alimony obligation has been consistent with his purpose in achieving his scheme of equitable distribution of the assets of this 30 year union. From January 1, 1993 until April 9, 1993, he made a single payment of $400. Since April 9, payments have been made but the account shows an arrearage of $1475 as of November 5, 1993.

On August 25, 1993, United States Bankruptcy Judge Richard S. Schmidt entered a discharge order which released Mr. Cropper from the obligation to Mrs. Cropper for the lump sum due her under the decree of divorce. With respect to Mrs. Cropper, her financial situation is not significantly different from when the master considered the matter and made his recommendation concerning alimony. Mr. Stewart determined her monthly income to be $400. Our conclusion is that she has, aside from alimony, $579 a month income derived from social security disability income ($289), tips ($50), and rent ($240). Her expenses were modestly stated at hearing to be approximately $1150 as compared to the $2500 per month claimed by Mr. Cropper. Of course Mrs. Cropper didn't include substantial sums for gifts, travel and expensive vacations as did Mr. Cropper in his presentation to this court. The reality is that she is barely able to exist while Mr. Cropper enjoys a lifestyle consistent with net income of over $5000

per month. She can't pay the water bill in Mann's Choice, but Mr. Cropper can afford to drink champagne in Corpus Christi.

The Domestic Relations Code, 23 Pa.C.S. §101 et seq. (1990) provides in pertinent part as follows:

"Section 3701. Alimony

"(a) *General Rule.*—Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary....

"(e) *Modification and termination.*—An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony."

Counsel apparently believe that there is a real legal question concerning whether the facts of this case justify the relief sought. Each has cited us to decisional authority that discuss circumstances where modification has either been sustained or rejected. Our view is that since the original alimony award in this case was premised on misinformation, and further, since Mr. Cropper's subsequent bankruptcy circumvented the distributional scheme of the divorce master, modification is not only justified but also required in order for this court to afford Mrs. Cropper some modicum of justice. In this regard, we consider Mr. Cropper's assertion that Mrs. Cropper is cohabiting

with a man as the meretricious posing as the meritorious. The evidence he argues supports only the conclusion that Mrs. Cropper, in desperate need of money, has resorted to renting rooms in her home to supplement her near nonexistent income.

Superior Court has indicated that divorce actions are to be governed by equitable principles, and that a court has a duty to effect economic justice between the parties. See *Beamer v. Beamer*, 330 Pa. Super. 154, 479 A.2d 485 (1984). To the extent the order we intend to enter restores to Mrs. Cropper a portion of that which Mr. Cropper has taken away by his deceit, we are fulfilling our duty.

## ORDER

And now, November 23rd, 1993, in accordance with an opinion filed this date, it is the order of this court that the petition of Shirley Cropper to modify alimony is granted. Accordingly, it is the further order of this court that,

(1) Robert M. Cropper is ordered to pay to the Domestic Relations Office of Huntingdon County the sum of $1900 per month as permanent alimony for Shirley Cropper. This obligation shall be effective June 25, 1993. In addition, Robert M. Cropper shall pay on account of the arrearage in this case the additional sum of $200 per month until the arrearage is paid in full.

(2) The Domestic Relations Office is directed to attach the wages of Mr. Cropper to effectuate this order.

(3) Mrs. Cropper is awarded her costs including counsel fees reasonably incurred. In this regard, counsel for Mrs. Cropper shall submit to this court within 20 days a statement of his fees.