648 A.2d 299

**Dale W. WAGONER, Appellant,**

**v.**

**Marilyn J. WAGONER, Appellee.**

Supreme Court of Pennsylvania.

Argued March 9, 1994.

Decided Sept. 29, 1994.

---

* Mr. Justice Montemuro is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen, see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

Francis E. Corbett, Calaiaro & Corbett, P.C., Pittsburgh, for appellant.

John H. Herbruck, Beaver, Frederick N. Frank, Frank, Bails, Kirk, Murcko & Toal, P.C., Pittsburgh, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Appellant has sought our review of the denial of his request to modify an alimony award under 23 Pa.C.S. § 3701, 428 Pa.Super. 648, 627 A.2d 210.[1] The order under examination was entered in March of 1991, in conjunction with a final decree in equitable distribution pursuant to the parties' divorce. The decree divided the parties' property, and directed appellant to pay appellee $1000 per month for a period of six years. At the time the payments were ordered, appellant was employed by Pan American Airlines as a ground flight engineer earning approximately $5,000 per month. Appellee, by contrast, was earning approximately $700 per month. No appeal was taken by either party.

In December of 1991, appellant's employment terminated with the bankruptcy of his employer. His income then consisted of employment compensation in the amount of $300 per week which would expire in July of 1992 unless extended by thirteen weeks, and eligibility to receive approximately $750 in pension funds from Pan American. However, appellant was uncertain as to when these payments would begin. In addition, appellant who was 57 years old at the time of hearing, April 15, 1992, suffers from degenerative arthritis in his right knee and progressive arthritis in his left knee, which physical limitations have prevented renewal of his license as a flight engineer. His application for a position as a ticket agent at another airline was rejected, as his other job inquiries have been.

1. 23 Pa.C.S. § 3701(e) **Modification and termination.—**
   An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

Appellee, 60 years old at the time of the hearing, had training and licensure as an elementary school teacher at the time of the parties' marriage, but became a full time homemaker after the birth of the parties' first child in 1964. When the parties divorced, she made no inquiry as to the requirements for obtaining teaching certification. The trial court found that given her age, any effort to procure the certification would be more laborious than productive.

At the time of the hearing on the petition to modify, appellant owed $6,400 in arrearages on the alimony award, which would be reduced by $4,800, the amount of an intercepted income tax refund. The trial court refused to reduce appellant's alimony obligation. It reasoned that the award of alimony was integral to the distribution of marital assets, which had been allocated in such a manner as to permit appellee to provide for her reasonable needs, and that any alteration would undermine the whole schema. The court noted that it would, however, entertain a petition under 23 Pa.C.S. § 3502(e),[2] should the parties wish to lodge one. The

2.  23 Pa.C.S. § 3502(e) **Powers of the court.**—If at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
     (1) enter judgment
     (2) authorize the taking and seizure of the goods and chattels and collection of the rents and profits of the real and personal, tangible and intangible property of the party;
     (3) award interest on unpaid installments;
     (4) order and direct the transfer of any property required in order to comply with the court's order;
     (5) require security to insure future payments in compliance with the court's order;
     (6) issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to. comply with the court order be brought before the court, at such time as the court may direct. If the court finds, after hearing, that the person willfully failed to comply with the court order, it may deem the person in civil contempt of court and, in its discretion, make an appropriate order, including, but not limited to, commitment of the person to the county jail for a period not to exceed six months;
     (7) award counsel fees and costs;
     (8) attach wages; or

Superior Court affirmed the decision of the trial court, and we granted allocatur to determine the extent to which section 3701(e) applies where marital property has been distributed.

■ Our standard of review in cases such as this is to determine whether the trial court has, in deciding the case, abused its discretion; that is, committed not merely an error of judgment, but has overridden or misapplied the law, or has exercised judgment which is manifestly unreasonable, or the product of partiality, prejudice, bias or ill will as demonstrated by the evidence of record. *Zullo v. Zullo,* 531 Pa. 377, 613 A.2d 544 (1992). We reverse and remand.

We begin with the unassailable premise that a major objective of the Divorce Code is to

Effectuate economic justice between the parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.

23 Pa.C.S. § 3102(a)(6).

■ The real question here is not whether relief in the form of a reduction of the alimony award should have been granted under section 3701(e); the trial court's decision to deny relief was a manifestly unreasonable disregard of the reality of appellant's situation, and thus an abuse of discretion. Not only does appellant's financial position compel such a result theoretically, but as a practical matter the current award will not be paid, as it has not been, because appellant has not the means to pay it.

Rather, if equity is indeed the ultimate goal and appellee's reasonable needs are to be met, more is required than relieving appellant of the obligation to pay appellee an amount he cannot afford. Thus the real question becomes whether the Court should or may act now to encompass a more general solution to the problem of doing equity, and if so, on what basis; or whether we should decline to act now and wait until

(9) find the party in contempt.

appellee implements some enforcement mechanism such as has already been used to obtain the tax refund money. For reasons both specific to the Divorce Code, and more generally applicable to equity, we find the former course not only preferable but necessary under the facts of this case.

■■ We first note that the lower courts' treatment of the issue here has been subverted by a problem of nomenclature. The assumption has been that because the payments made to appellee have consistently been called alimony, that is what they were. Alimony is defined as "An order for support granted by this Commonwealth or any other state to a spouse or former spouse in conjunction with a decree granting a divorce or annulment." 23 Pa.C.S. § 3103. Its purpose is to provide the receiving spouse with sufficient income to obtain the necessities of life. *Zullo* at 380, 613 A.2d at 545. The payments awarded here do not fit this description either in form or in intention. Rather, the award was made in lieu of granting appellee her share of appellant's pension, and was fashioned to pay out over time appellee's interest in an asset which would otherwise remain undistributed until appellant's retirement, some years later than that of appellee. The payments were calculated to approximate the share of the pension which appellee would receive but in a form which would allow her, prior to distribution of the actual pension, to establish a retirement fund for herself. Thus to treat these payments as subject to the same restrictions as alimony is to skew the whole process of reviewing appellant's petition.

We premise this decision in the first instance on the philosophy expressed in *Zullo,* supra, and *Bold v. Bold,* 524 Pa. 487, 574 A.2d 552 (1990). Both of these cases, albeit arising in circumstances dissimilar to the one at bar and posing a different legal question, nevertheless espouse the notion that the equitable purposes underlying the Divorce Code allow for liberal interpretation of its provisions.

*Zullo* and *Bold* concern the principle of equitable reimbursement, not at issue here, but which, in its evolution is consistent with the legislative intent of section 3102(a)(6) of

the Code. In both of these cases, the wife's contributions to the marriage had permitted the husband to acquire education which would significantly improve his earning power. These contributions were found to reach a point far in excess of the bare minimum of legally obligated support.

At dissolution, each marriage possessed insufficient assets to repay this sacrifice which had added so significantly to the husband's future financial status. Thus, in addition to equitable distribution, the wife in each case, for her efforts, was awarded payments, termed equitable reimbursement, in order to equalize the result.

In *Zullo*, despite the appellation alimony, these payments were found not to be alimony insofar as they would be affected by the remarriage of the wife. Rather, they were determined to be recompense for expenditures made by the wife to cover joint obligations. The governing principle was fairness. Both parties had incurred the debts, but only the wife had satisfied them. The husband, therefore, was ordered to reimburse the wife for the outlay made on his behalf even though the marriage had ended, and wife had remarried, an action which would normally terminate payments characterized as alimony.

In the case before us the facts are different but the question still depends for its answer on application of the fairness principle. Here the trial judge determined that the award of 'alimony' was, in fact, a substitute for granting appellee a share of appellant's pension. Absent the availability of such payments, the planned equitable distribution lost the flavor of equity, leaving the court no alternative but reexamination of the original distribution. Rather than deny appellee the benefit of the equitable distribution scheme, the court determined to maintain the status quo, denying equity to appellant who was held to a responsibility beyond his resources. However, under the principle enunciated in *Zullo* and *Bold* that scheme, because its directions were still not finalized, may be molded to overcome the threat to its original intention. Both the limited time between entry of the decree and the change in circumstances, nine months, and the fact

that a major asset remained undistributed at the hearing militate in favor of this solution.[3]

The Superior Court in *Romeo v. Romeo*, 417 Pa.Super. 180, 611 A.2d 1325 (1992), reached a similar conclusion. There too the equitable distribution decree went unchallenged by both parties. Some eight months after entry of the decree, the wife requested modification of sales listing agreements on certain parcels of real property which were to be sold as part of the distribution plan. The list prices of the properties had become unrealistic, they were not selling, and wife could no longer afford, by herself, the mortgage, insurance, taxes and other payments due. She therefore asked that husband be ordered to share the financial obligations for the property, and to sign new listing agreements, which he had hitherto refused to do.[4]

The Superior Court, in reaching its decision, found that decrees in equitable distribution are non-modifiable. However, it cited 23 Pa.C.S. § 3104(a)(1) for the proposition that courts may retain continuing jurisdiction over 'the determination and disposition of property rights and interests between spouses....' Pursuant to this equity jurisdiction, the court may grant the special relief referred to in Rule 1920.43(a)[5]. The Superior Court concluded that wife's motion for modification was properly entertained as a prayer for special relief despite the absence of this term on the document itself because husband's actions in refusing to sign new listing

3. We decline to decide whether in all cases fairness dictates a reexamination of the provisions dividing the parties' property, since such a decision is fact based.

4. The husband was also asked to reimburse the wife for some medical expenses which were incurred by the parties' children, and which were not covered by husband's health insurance.

5. **Pa.R.C.P. 1920.43. Special Relief.**
    (a) at any time after the filing of the complaint, on petition setting forth facts entitling the party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security
       (1) issue special or preliminary injunctions necessary to prevent the removal, disposition, alienation or encumbering of real or personal property in accordance with Rule 1531(a), (c), (d) and (e); or
       (2) order the seizure or attachment of real or personal property; or
       (3) grant other appropriate relief.

agreements for the properties had denied her the benefit of the trial court's plan for equitable distribution of marital property.

Equity provides that the court treat as done that which should have been done. Appellant's petition, like the wife's in *Romeo*, should have been regarded not as a prayer for modification of alimony, but as a prayer for special relief pursuant to Pa.R.C.P. 1920.43. No new petition need have been filed. The stock holdings which had not yet been distributed could have been examined, along with the payment order, to determine the viability of applying 23 Pa.C.S. § 3502(a)(4), or some other section of the statute which would achieve the equity sought after by the court. This notion was in fact presented to the court at the hearing, but was rejected because no appeal had been taken from the equitable distribution decree. At that time appellee's counsel orally requested that the court examine the possibility of reformulating the allotment of this as yet undistributed asset.

Therefore, as a matter of judicial economy, and basic fairness to both parties, we reverse the order of the Superior Court and remand to the trial court for further proceedings consistent with this opinion.

NIX, C.J., files a dissenting opinion.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

NIX, Chief Justice, dissenting.

I do not agree with the majority's conclusion that the trial court abused its discretion in denying Appellant's request for modification of alimony by not treating his petition as a prayer for special relief, therefore, I dissent. The majority correctly states that the payments at issue do not fit the description of alimony and should not be treated as such, but it oversimplifies the opinions of the lower courts by implying that they failed to recognize this fact. Maj. op. at 301–02. As the trial

court clearly stated, it denied Appellant's motion "[s]ince the alimony award was so intertwined with the equitable distribution award, a modification of the alimony award would unduly weaken the equitable distribution scheme that we intended." No. 612 of 1988 DV (C.P. Beaver County filed April 29, 1992). Clearly, the trial court did not treat the payments as alimony.

The Superior Court, in *Romeo v. Romeo*, 417 Pa.Super. 180, 611 A.2d 1325 (1992), found that an equitable distribution decree is not modifiable. It is also true that Rule 1920.43(a) of the Pennsylvania Rules of Civil Procedure allows the courts to grant special relief and that courts retain equitable jurisdiction over "[t]he determination and disposition of property rights and interests between spouses...." 23 Pa.C.S. § 3104(a)(1). However, because I find that the trial court did not abuse its discretion, I see no need to invoke this Court's equitable jurisdiction. The majority relies too heavily on Appellant's reduction in income in finding that "the trial court's decision to deny relief was a manifestly unreasonable disregard of the reality of Appellant's situation, and thus an abuse of discretion." Maj. op. at 169. Appellant's loss of employment, although it greatly reduced his monthly income, is not the only reality of his situation. Appellant does have the means to make these payments, but the majority seems to ignore this reality. Appellant received substantial assets when he and Appellee divorced, including a cottage in Erie, almost five acres of land in Chippewa Township, a 1971 Corvette, over $32,000 in stocks, his pension with Pan Am and other assets providing Appellant with an equitable distribution well over $100,000. Appellant was also awarded non-marital assets which included a condominium in Florida and retirement accounts he held with Pan Am. Rather than having Appellee participate in Appellant's pension, Appellant was ordered to pay Appellee $1,000 per month for a limited period. This would allow Appellee to plan for her retirement, and Appellant's retirement would be secured, as he maintained the pension and his retirement accounts. Appellant can use any of the substantial assets he owns to satisfy his obligation to Appellee.

The majority's reliance on *Romeo v. Romeo,* 417 Pa.Super. 180, 611 A.2d 1325 (1992), demonstrates that it failed to take into account Appellant's assets, a factor which distinguishes the instant case. The court's equitable powers allowed the distribution of assets in *Romeo* to be modified when the husband refused to agree to lower the selling price for properties originally awarded to the wife. She was obligated to pay the taxes on these properties until they were sold; however, the wife, unlike Appellant, did not have the resources to maintain the taxes. Moreover, the fact that the husband's actions in *Romeo* prevented the wife from selling the properties was a factor in allowing the distribution to be modified. Without the husband's cooperation, the wife would have had to maintain the taxes indefinitely.

To prevent Appellee from receiving what the court found she was equitably entitled to upon dissolution of the marriage, would not be an equitable resolution to this matter. The lower courts recognized this, and therefore refused to allow Appellant to destroy a scheme which was grounded in equity. This decision was within the discretion of the trial court. In light of the fact that Appellant does have the means to maintain the equitable distribution scheme, he should be required to decide how he will meet his obligation. If he fails to do so, Appellee can petition the court pursuant to section 3502(e), as the lower courts correctly stated.

Since the trial court did not abuse its discretion, I would affirm.