## Bjerke v. Bjerke

C.P. of Allegheny County, no. FD 04-8125-003.

*Charles F. Pegher* and *Rebecca Morris-Chatta,* for plaintiff.
*Daniel H. Glasser,* for defendant.

WECHT, *J.,* October 14, 2008—This opinion addresses the issues of whether defendant Laura Rouseau (Wife) may testify at a hearing to re-open equitable distribution and whether this court may re-open equitable distribution after Richard J. Bjerke (Husband)'s death.

## BACKGROUND

Husband and Wife married on October 11, 1997. One child was born during the marriage. Husband and Wife separated on September 23, 2004, and divorced on June 5, 2007. Husband married Elizabeth Ferrell (Ms. Bjerke) on July 13, 2007.

On May 7, 2007, Husband and Wife executed a consent order for equitable distribution. Husband agreed to pay Wife $119,276 in cash and $100,000 in a transfer from

his retirement accounts. Wife agreed to a termination of the alimony/alimony pendente lite payments that she was receiving. Husband made the $119,276 cash payment. Husband was to inform Wife's counsel which retirement account was to be used for the $100,000 transfer. Husband complied with this requirement as well. However, no QDRO was executed, and the transfer did not occur.

On April 12, 2008, Husband took his own life. On May 23, 2008, Wife presented a motion for entry of qualified domestic relations order. A hearing was scheduled on the matter. On June 25, 2008, this court denied Wife's request for a nunc pro tunc QDRO, but scheduled a hearing on Wife's request to re-open equitable distribution. That hearing occurred on September 29, 2008.

## DISCUSSION

The first issue to address is whether this court may consider testimony Wife gave at the September 29 hearing. Ms. Bjerke objected to Wife's testimony as being precluded by the Dead Man's Act. 42 Pa.C.S. §5930. This court denied Ms. Bjerke's objection without prejudice, allowed Wife to testify, and preserved Ms. Bjerke's objection so that her cross-examination did not constitute a waiver of the objection, and so that this court could strike the testimony (in whole or in part) if appropriate after taking the matter under advisement.

Under the Dead Man's Act, a witness is disqualified from testifying in circumstances where: the deceased had an interest in the matter at issue; and the interest of the witness is adverse to the decedent's estate; and the right of the deceased has passed to a party of record represent-

ing the estate. *In re Estate of Rider,* 487 Pa. 373, 377, 409 A.2d 397, 399 (1979). The test for interest is whether a witness will gain or lose as a direct legal effect of the judgment. *In re Groome's Estate,* 337 Pa. 250, 252, 11 A.2d 271, 273 (1940). An interest is adverse when the immediate result of the particular suit would cause a loss or gain to the witness, not when the effect of the particular suit would arise in other possible actions. *Billow v. Billow,* 360 Pa. 343, 347, 61 A.2d 817, 819 (1948).

Generally, in cases where one spouse has died, testimony about a postnuptial agreement is precluded. *In re Estate of Hartman,* 399 Pa. Super. 386, 394, 582 A.2d 648, 652 (1990). Where the parties had an agreement to disclaim their elective shares, the husband could not testify about the validity of the agreement after the wife's death. *Id.*[1] In the *Hartman* case, the husband had the burden to show the agreement was invalid before he could attempt to elect against the estate of the wife. But the husband was precluded from testifying about the validity of the agreement, particularly with respect to whether there was full and fair disclosure.

The instant case is similar. Before she can re-open equitable distribution, Wife first must show that the agreement was not fulfilled. The Dead Man's Act applies to "matters occurring before the death." 42 Pa.C.S. §5930. Wife's testimony regarding the attempt to obtain the QDRO, and about anything else that occurred after Husband died, is admissible. The other testimony by

---

1. However, a sister did not have an adverse interest when her testimony would help her brother claim money and the sister would only get a share if the brother chose to give it. *Commonwealth Trust Co. v. Szabo,* 391 Pa. 272, 282, 138 A.2d 85, 89 (1957).

Wife is excluded, and accordingly stricken from the record.

The second issue is whether equitable distribution should be re-opened. In the *Reese* case, there was an equitable distribution order upon which both parties relied and acted prior to the death of the wife. *Reese v. Reese,* 351 Pa. Super. 521, 522, 506 A.2d 471, 472-73 (1986). Because the parties willingly agreed to the order and had acted upon it, the wife's death, prior to entry of a divorce decree, did not affect the agreement. *Id.* at 529, 506 A.2d at 475. Similarly, where the husband died after a marital settlement agreement and consent order had been entered, but prior to the divorce decree, the contract was found to be enforceable. *In re Estate of Bullotta,* 575 Pa. 587, 592, 838 A.2d 594, 597 (2003). In *Bullotta,* the Supreme Court determined that the action required under the contract was not unique to the individual, and that the estate could complete the contract such that the contract was not voided by the husband's death. *Id.*

These cases are distinguishable from the case at bar. In this case, the divorce decree issued before Husband died. Husband's estate cannot complete the agreement. The estate cannot enter a QDRO, because the asset already has passed to the beneficiaries.

The crux of the issue—vigorously disputed by Wife and Ms. Bjerke—is whether this court has the authority to re-open equitable distribution. Most cases indicate that equitable distribution cannot be re-opened beyond the 30-day limit allowed by the rules. See *e.g., Ratarsky v. Ratarsky,* 383 Pa. Super. 445, 557 A.2d 23 (1989). Other cases, involving assets that were not included in equitable distribution, also have concluded that equitable distribu-

tion should not be re-opened. See *e.g., Major v. Major,* 359 Pa. Super. 344, 518 A.2d 1267 (1986); *Beamer v. Beamer,* 330 Pa. Super. 154, 479 A.2d 485 (1984).

Two other cases, however, suggest that a trial court has the power to re-open equitable distribution in appropriate circumstances. Relying on 23 Pa.C.S. §3104 (a)(1), which provides continuing jurisdiction over the determination and disposition of property rights between spouses, 23 Pa.C.S. §3502(e)(4), which allows for an order for transfer or sale of property when a party does not comply with equitable distribution, and Pa.R.C.P. 1920.43, which allows the trial court to use equity powers to grant petitions for special relief, appellate courts approved re-opening of equitable distribution in *Wagoner v. Wagoner,* 538 Pa. 265, 648 A.2d 299 (1994), and *Romeo v. Romeo,* 417 Pa. Super. 180, 611 A.2d 1325 (1992).

In view of these latter cases, it appears that this court's equity powers properly may be invoked now to modify equitable distribution. There is an issue of equity here. Wife was deprived of almost half her equitable distribution share solely because Husband committed suicide before distribution could be fully effectuated. In *Romeo* and *Wagoner,* there was less than a year between the decree and the request for modification. Here, slightly over a year has passed. In *Romeo* and *Wagoner,* the need for the modification—a change in the housing market and loss of a job, respectively—came through no fault of the requesting party. Here, Wife is requesting the modification because of Husband's death, which occurred through no fault of hers. The cases suggest appellate willingness to effectuate the parties' agreements even after the death of a party.

This appears to be an issue of first impression. As a matter of equity, and absent compelling distinction between the instant case and the *Romeo* and *Wagoner* cases, the equitable distribution order herein may be re-opened.

It bears noting that both options present serious practical difficulties. If equitable distribution is not re-opened, Wife will have to pursue her claim among the other various creditors in what Ms. Bjerke has admitted is an insolvent estate. On the other hand, a new equitable distribution proceeding will be problematic. The Dead Man's Act presumably will preclude Wife from testifying on most issues. It also is not clear that Ms. Bjerke will have necessary or relevant information.

On balance, as discussed, re-opening equitable distribution appears to be the best way (albeit an imperfect one) to try to work some measure of economic justice as between Husband and Wife. In the real world, the practical difficulties mean that neither this option (nor the estate litigation option this court has declined) will be able to render anything approaching perfect justice.

This court will grant Wife's motion. An order follows.

## ORDER

And now, October 14, 2008, following record hearing on September 29, 2008, and in accordance with the foregoing opinion, it is hereby ordered that:

(1) Plaintiff's Dead Man's Act objection to Wife's September 29, 2008 testimony is granted in part and denied in part, nunc pro tunc, and Wife's testimony is

388

stricken in part, as set forth in the foregoing opinion; and

(2) Wife's request to re-open equitable distribution is granted; and

(3) A full-day hearing on equitable distribution is scheduled on December 4, 2008, beginning at 9:30 a.m., in Room 4029, 440 Ross Street, Pittsburgh, Pennsylvania 15219; and

(4) A pretrial order will follow.