# Markantonis v. Markantonis

*Barry J. Cohen*, for plaintiff.
*Michael Mancuso*, for defendant.

HIGGINS, *J.*, March 27, 2014—On March 12, 1998, plaintiff, Michael Markantonis, ("husband") and defendant Norma Gabriela Markantonis ("wife") were married in New Rochelle, New York. There were no children born of the marriage. The parties separated and husband filed a complaint in divorce on December 5, 2011. Husband claims that the marriage is irretrievably broken and requests dissolution of the marriage. Husband also requests equitable distribution of property rights. A divorce master's hearing was held on June 4, 2013, and the master's report and recommendation was filed on August 2, 2013. On August 18, 2013, wife filed exceptions to the master's report and recommendations and, thereafter, on August 21, 2013, husband filed counter exceptions. Oral arguments were held on the parties' exceptions and we are now prepared to dispose of the exceptions.

When evaluating the merit of any exceptions filed to a divorce master's recommendation, this court must first examine the master's report. In Pennsylvania, "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly to the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Childress v. Bogosian*, 12 A.3d. 448, 456 (Pa. Super. 2011) (citation omitted). However, the master's report "is advisory only... and the reviewing court is not bound by it and it does not come to the court

with any preponderate weight or authority which must be overcome." *Rothrock v. Rothrock*, 765 A.2d 400, 404 (Pa. Super. 2000) (citation omitted). In determining issues of credibility, the master's findings must be given the greatest weight because "it is he who heard and observed the witnesses." *Mott v. Mott*, 453 A.2d 1038 (Pa. Super. 1982). "[A]lthough the master's report is entitled to great weight, it is the responsibility of the court to make the final equitable distribution." *Trembach v. Trembach*, 615 A.2d 33, 35 (Pa. Super. 1992) (citing *Morschhauser v. Morschhauser*, 516 A.2d 10 (Pa. Super. 1986)).

In her first two exceptions, wife complains that the master erred in his valuation of the marital residence, which included rental buildings, and that the master erred by reducing the net value of the marital residence by 3.5%. The parties own two parcels, one which is the marital residence ("residence") located at 732 Gilbert Road, Gilbert, Monroe County, Pennsylvania, and the other is located at 735 Gilbert Road, Gilbert, Monroe County, Pennsylvania. Both properties have rental units, however, the 735 Gilbert Road property ("rental property") has only rental units and was not used as the marital residence. At the beginning of the master's hearing, the parties stipulated to the appraisal and updated appraisal offered by husband's expert Thomas G. McKeown. Wife did not admit to the values set forth in that appraisal, however, she stipulated to having the McKeown appraisal received into evidence. Wife offered her own testimony about the values of the properties. The appraisal submitted by husband gives a market value for the residence of $300,000.00 with a mortgage balance of $206,112.00, leaving a gross

net value of $93,888.00. The master deducted 3.5% of the market value leaving a net value of $83,388.00. Wife, on the other hand, submitted a packet of photographs showing the condition of the residence. In addition, wife submitted several pictures of various properties in the area to establish the value of the residence. However, wife never testified to a value for the residence and the photos she introduced did not have any details for the other properties or a summary to explain the comparison used to value the residence. The valuations submitted by husband had an appraiser certificate and set for the method (valuation process and direct sales comparison) for the appraisal. Husband's appraisal also considered the rental buildings in determining a value. After reviewing all of the evidence submitted at hearing, we see no error in the master's valuation of the residence and we accept his valuation of the residence. *Kohl v. Kohl*, 564 A.2d 222 (Pa. Super. 1989).

Wife also complains that the master reduced the value by 3.5% which was not based on an actual third party sale. We may consider all factors which are relevant to equitable distribution, including, "[t]he expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain." 23 Pa. C.S.A. §3502 (10.2). Husband testified that he expects to sell the residence in the future. [Notes of testimony, June 4, 2013, at p. 70 (hereinafter referred to as "N.T.").] We see no error in the master deducting expenses for the sale of the residence, even where such expense is not immediate or certain. This exception is denied.

Next, wife complains that the master erred in assigning a zero net distribution to her on the rental property. She argues that she should receive a credit for the negative value. Initially we note that the mortgage is in the wife's name alone even though this is marital property. This is the primary reason for the master to award the rental property to wife. Furthermore, the equitable distribution scheme was determined by the honorable Jonathan Mark after a hearing in regard to a post-nuptial agreement entered into by the parties. Judge Mark held that the agreement was binding and that under its terms husband receives 80% and wife receives 20% of the marital assets. Although she complains that the rental property has a negative value, wife provides no legal authority for her proposition that she is entitled to anything except a zero net distribution for this asset. Further, the master assigned 90% of the credit card debt to husband which totals $20,841.87. We have broad discretion in fashioning an award of equitable distribution. *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009) (citation omitted). In this regard we are satisfied with the distribution determined by the master and we will, therefore, deny wife's exception on this issue.

Similarly, wife complains that the master erred in failing to award her credit from husband's share of the distribution for marital funds used by husband to pay his attorney. As we have stated above, husband was assigned 90% of the marital debt which includes the credit card charge for husband's attorney. However, the postnuptial agreement ("agreement") clearly provides that the parties will bear their own costs including attorney's fees. Consequently, we will award a credit to wife for the amount of $1,500.00.

Next, wife claims she failed to receive credit for delinquent mortgage payments for the rental property. During the master's hearing, husband testified that he used the rental proceeds to pay the residential mortgage [N.T., p.36]. Husband stated that he preferred to lose the rental property rather than his residence [N.T., p.36]. The master heard all of this testimony as well as the testimony from wife. The master's determination, particularly to the question of credibility of witnesses, will be given the fullest weight since he had the opportunity to observe and assess the behavior and demeanor of the parties. We find that the record supports the master's determination and we will not disturb it. This exception is denied.

In her next exception, wife complains that the master erred in assessing a retirement account at Mt. Airy Lodge for $900.00 when no such benefit existed. Husband testified that wife received a 401K plan from Mt. Airy, however, despite numerous requests, wife failed to disclose any information about the retirement plan [N.T., p. 67-68]. Husband stated that wife indicated the account has a value of $900.00. A review of the record indicates that wife presented no evidence to rebut the existence of a Mt. Airy retirement account. We find no error in the master assigning a value of $900.00 for the Mt. Airy 401K under these circumstances. This exception is denied.

Wife filed an exception to the master's award of alimony which she argues is inadequate and unreasonably limited in duration. "Alimony" is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as

well as the payor's ability to pay. *Teodorski v. Teodorski*, 857 A.2d 194 (Pa. Super. 2004). The purpose of alimony "is to provide the receiving spouse with sufficient income to obtain the necessities of life." *Stamerro v. Sramerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005) (citing *Wagoner v. Wagoner*, 538 Pa. 265, 270, 648 A.2d 299, 301 (1994). Alimony is generally based upon reasonable needs in accordance with the parties' standard of living established during the marriage, and the payor's ability to pay. *Id*, (citation omitted).

In his report, the master correctly pointed out that the agreement fails to address "maintenance" or alimony. The agreement was deemed to be valid by the honorable Jonathan Mark and we will not disturb his finding on that issue. Wife argues that the alimony awarded will not provide her with sufficient income to obtain the necessities of life. We agree.

The master specifically reviewed the following factors in determining alimony:

(1) The relative earnings and earning capacities of the parties.

(2) The ages and the physical, mental and emotional conditions of the parties.

(3) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(4) The expectancies and inheritances of the parties.

(5) The duration of the marriage.

(6) The contribution by one party to the education, training or increased earning power of the other party.

(7) The extent to which the earning power, expenses or financial obligations of a party will be affected by reason of serving as the custodian of a minor child.

(8) The standard of living of the parties established during the marriage.

(9) The relative education of the parties and the time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment.

(10) The relative assets and liabilities of the parties.

(11) The property brought to the marriage by either party.

(12) The contribution of a spouse as homemaker.

(13) The relative needs of the parties.

(14) The marital misconduct of either of the parties during the marriage. The marital misconduct of either of the parties from the date of final separation shall not be considered by the court in its determinations relative to alimony, except that the court shall consider the abuse of one party by the other party. As used in this paragraph, "abuse" shall have the meaning given to it under section 6102 (relating to definitions).

(15) The federal, state and local tax ramifications of the

alimony award.

(16) Whether the party seeking alimony lacks sufficient property, including, but not limited to, property distributed under chapter 35 (relating to property rights), to provide for the party's reasonable needs.

(17) Whether the party seeking alimony is incapable of self-support through appropriate employment.

(Master's report filed August 2, 2013, at p. 9-10). Specifically, the master found factors 1-3, 5,16 and 17 bear on wife's need for alimony. In general we accept the master's report, however, we conclude that the rental property is not capable of producing rental income if wife uses it as her primary residence. Wife submitted an expense sheet (defendant's Exhibit 15) which sets forth her expenses. We find the expenses to be reasonable necessary to provide her with life's basic needs.

Wife is currently 54 years of age with a limited work history. In ordering alimony the court shall determine the duration of the order, which may be for a definite or an indefinite period of time which is reasonable under the circumstances. 23 Pa.C.S.A. § 3701(c). Under the circumstances in this case, we believe that alimony in the amount of $2,700.00 per month for a period of 36 months is more appropriate than $600.00 for 30 months. Although we believe that wife is capable of working to support herself, the jobs she is capable of performing are lower paying entry level jobs with little room for advancement. On the other hand, husband is a handyman who has built up the residence to attract several commercial tenants.

As such we believe that husband has a greater earning capacity as well as the potential for other income from rentals. We are called upon to achieve economic justice in the divorce code, which includes alimony. Alimony is also designed to be rehabilitative, leading to the self sufficiency of the recipient. *Pacella v. Pacella*, 492 A.2d 707 (Pa. Super. 1985). In modifying the master's award of alimony, we believe that we are achieving economic justice while allowing wife to become more self-sufficient. Accordingly, we will grant wife's exception.

Next, we must consider the counter exceptions filed by husband in this matter. Husband complains that the master erred in awarding alimony to wife which he believes was waived by wife in their agreement. As we stated above, the agreement is silent on the issue of maintenance or alimony. We have set forth our reasoning in this matter. We find that husband's exception lacks merit and is, therefore, denied.

In his second and final counter exception, husband argues that the master erred in awarding the rental property to wife where she shows no capacity to pay the mortgages, taxes or utilities. We recognize that until we modified alimony, as set forth above, wife lacked the capacity to pay the necessary items for the rental property. However, we believe that wife is now capable of paying these bills. Additionally, husband stated that he was unable to make these payments and he had fallen behind in the mortgage payments [N.T., p. 68]. Since we believe that wife will now have the ability to pay the mortgage, taxes and utilities for the rental property, we find that this argument lacks merit. Moreover, husband failed to support his argument with

citation to legal authority. This exception is denied.

## ORDER

And now, this 27th day of March 2014, it is ordered and decreed as follows:

1. Michael Markantonis, plaintiff and Norma Gabriela Markantonis, defendant are divorced from the bonds of matrimony.

2. The recommendations of the master for equitable distribution of the parties' marital property are approved and made part of this decree, with the following amendments:

a. Defendant's exception that the master erred in failing to award her credit from husband's share of the distribution for marital funds used by husband to pay his attorney is granted. The sum of $1,500.00 shall be added to the distribution to defendant pursuant to the master's report and recommendation.

b. Defendant's exception regarding Alimony is granted. Alimony shall be modified requiring plaintiff to pay alimony in the amount of $2,700.00 per month for a period of 36 months, the commencement of which is to begin on the first day following the entry of the divorce decree.

c. All remaining exceptions of defendant are denied.

3. The counter exceptions of plaintiff are denied.

4. The court retains jurisdiction of any claims raised by the parties to this action for which a final order has not yet been entered.