557 A.2d 23

**Lillian RATARSKY, Appellee,**

**v.**

**Jack RATARSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1988.

Filed April 14, 1989.

446

Gerald Roth, Allentown, for appellant.

Mark S. Sigmon, Bethlehem, for appellee.

Before CAVANAUGH, McEWEN and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Lehigh County Court of Common Pleas entered pursuant to the court's

broad equitable powers in divorce cases, 23 Pa.S.A. § 401(c), directing the appellant, Jack Ratarsky, to pay the appellee, Lillian Ratarsky, 50% of the cash surrender value of the life insurance policies which were held in trust by the parties. Upon review, we find that the trial court abused its discretion and exceeded its authority. Accordingly, we vacate the order and dismiss appellee's petition.

The record reveals the following facts: On February 7, 1986, the parties' divorce decree was entered. In addition, a property settlement agreement was incorporated into the divorce decree by stipulation of the parties. The property settlement was finalized on February 3, 1986, following counseled negotiations which began in March of 1985.

At the heart of this dispute is the *inter vivos* trust created by the parties in June of 1965, which contained nine life insurance policies as well as a certificate of deposit. On March 11, 1985, the appellee's counsel asked the appellant's counsel to inform the trustee to advise him of any withdrawal of trust assets or change in benefits, and on March 14, 1985, appellant's counsel complied with the request. The trustee then supplied the appellee and her counsel with a copy of the trust assets. The insurance policies in question for accounting purposes were carried by the trust at a book value of $1.00 and a market value of $1.00, although their actual cash surrender values were considerably higher. Appellee's counsel made numerous inquiries concerning the policies; however, counsel never directly inquired as to the surrender value of the policies. On December 20, 1985, the trustee, at the appellant's request, turned over the insurance policies to the appellant in order to afford the appellant an opportunity to review the policies. The appellee and her counsel were never notified by the trustee of the appellant's withdrawal of the policies, and the appellant never returned the policies.

Eventually, the parties reached a property settlement agreement on February 3, 1986. On February 4, 1986, the

appellant notified the trustee that he was revoking the trust and was retaining possession of the insurance policies. On March 13, 1986, the trustee liquidated the trust and the husband acknowledged the receipt of the certificate of deposit proceeds in the amount of $224,906.66.

On March 17, 1986, the appellee filed a motion to open the divorce decree pursuant to 23 Pa.S.A. § 602, alleging the appellant had perpetrated extrinsic fraud by concealing the cash surrender value of the insurance policies and thereby precluding a fair settlement. On August 11, 1987, the appellee, through new counsel, filed an amended motion to open which, in the alternative, requested that the court impose a constructive trust upon the marital assets in accordance with 23 Pa.S.A. § 403.[1]

A hearing on the motion was held on September 4, 1987, and the order *sub judice* was entered on April 27, 1988. Significantly, the court found that the appellant had not perpetrated intrinsic fraud in his negotiations. However, the lower court found that the parties had agreed that the trust, including the insurance policies, would be divided equally between them. The court therefore ruled that the appellant by not remitting to the appellee 50% of the policies' cash value had violated the terms of the property settlement agreement. Thereafter, the court invoked its equitable powers granted in 23 Pa.S.A. § 401(c) and ordered the appellant to remit 50% of the cash surrender value of the policies to the appellee. This appeal followed.

In this appeal, we must address the interplay of Divorce Code sections § 401(c) and § 603. Initially, we recognize that the Legislature expressly granted the lower court

**1.** After reviewing the evidence, the lower court found 23 Pa.S.A. § 403 did not apply to the present action. § 403 applies when a party fails to disclose the existence of marital assets subject to distribution. Instantly, the lower court found that the existence of the insurance policies was fully disclosed by the appellant. Thus, the imposition of a constructive trust was not appropriate, and 23 Pa.S.A. § 403 does not apply. For correct application of 23 Pa.S.A. § 403, see *Major v. Major,* 359 Pa.Super. 344, 518 A.2d 1267 (1986).

broad equity powers in divorce proceedings pursuant to § 401(c) which provides:

> (c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

The procedure for exercising the court's equitable power is explicitly provided for by the Legislature in 23 Pa.S.A. § 602. *Fenstermaker v. Fenstermaker,* 348 Pa.Super. 237, 241–42, 502 A.2d 185, 187 (1985). As we recently stated in *Anderson v. Anderson,* 375 Pa.Super. 341, 544 A.2d 501 (1988), "Section 602 sets out clear evidentiary requirements which must be met by the parties before the court may exercise its authority to open, vacate or strike a divorce decree, and the hearing court's exercise of or refusal to exercise its authority under that section is reviewable on appeal." *Id.,* 375 Pa.Superior Ct. at 348, 544 A.2d at 505 (explaining the relationship of 42 Pa.C.S.A. § 5505 and 23 Pa.S.A. § 602). 23 Pa.S.A. § 602 provides:

> A motion to open a decree of divorce or annulment may be made only within 30 days after entry of the decree and not thereafter. Such motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or because of a fatal defect apparent upon the face of the record, must be made within five years after entry of the final decree. Intrinsic fraud is such as relates to a matter adjudicated by the judgment, including perjury and false testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the

consequence of precluding a fair hearing or presentation of one side of the case.

■ Instantly, the appellee filed a motion to vacate her divorce decree pursuant to 23 Pa.S.A. § 602. The appellee filed her motion on March 18, 1986, thirty-nine days after entry of the final decree. Since she filed her motion more than thirty days after entry of the divorce decree, the appellant's motion cannot be construed as a timely motion to open and the question of whether intrinsic fraud existed is moot, 23 Pa.S.A. § 602; *Anderson, supra.* Although, we note the trial court expressly found that the appellant had not committed intrinsic fraud. Clearly, the lower court did not have the authority to open the divorce decree.

■ The appellee alleged the appellant committed extrinsic fraud which precluded "a fair hearing or presentation of one side of the case." She contended that the appellant's alleged concealment of the cash surrender value of the insurance policies constituted extrinsic fraud. However, this is obviously not a case where extrinsic fraud precluded the appellee's opportunity for a fair hearing. Even assuming *arguendo* that the appellant did conceal the cash surrender value, the appellant's acts did not constitute extrinsic fraud under the Divorce Code.

In *Fenstermaker, supra,* we noted the distinction between extrinsic fraud and intrinsic fraud as defined by our Supreme Court in *McEvoy v. Quaker City Cab Co.,* 267 Pa. 527, 536, 110 A. 366, 368 (1920):

By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise of compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such

case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: *Pico v. Cohn,* 91 Cal. 129 [25 P. 970, 27 P. 537]. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiciton of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial. *Bleakley v. Barclay,* 75 Kansas 462 [89 P. 906].

*Fenstermaker,* 502 A.2d at 188, quoting *McEvoy, supra,* and citing related cases.

A review of the record reveals that the appellant's actions were not tantamount to extrinsic fraud and did not prevent a fair hearing. The property settlement in question was entered into by the parties following almost one year of extensive, counseled negotiations. Appellee's counsel contends he never became aware of the policies' true value because opposing counsel's intimations that a full disclosure in good faith had been made. In fact, a sufficient disclosure of the appellant's assets was made. The appellee was informed of the exact contents of the trust fund, including the precise identity of each insurance policy which was a part of the trust. If counsel wanted to know the value of the policies, all he needed to do was go to the Bank and review them; thereafter, counsel would have had full knowledge of the policies' cash surrender value. However, counsel never saw fit to examine the policies. Appellee's trial counsel must remember that no matter how amiable property settlement negotiations are, they still are adversarial, and counsel has a duty to protect his client's best interests by fully investigating the extent of the marital

assets. No doubt the appellee knew of the policies exist-ence and should have *specifically* inquired concerning their cash surrender value. Certainly, the appellee's trial coun-sel's performance cannot be imputed to the appellant and labeled as fraud. Accordingly, the lower court had no authority to vacate the divorce decree on the basis of extrinsic fraud. See *Fenstermaker*, 502 A.2d at 188–189.

■ The lower court *sub judice*, however, neither ex-pressly opened nor vacated the decree. Instead, the lower court considered this case to be "one of not fully complying with the terms of the property settlement." Following the hearing on the appellee's motion to vacate, the lower court found that the parties had agreed to split the contents of the trust equally. Consequently, the court, invoking its broad equitable powers granted in 23 Pa.S.A. § 401(c), ordered the appellant to pay 50% of the insurance policies' cash value to the appellee. Initially, we reiterate that the lower court had no authority to open or vacate divorce decree. Therefore, the lower court could not modify the precise terms of the agreement. See *Simpson v. Allstate Insurance Co.*, 350 Pa.Super. 239, 504 A.2d 335 (1986) (emphasizing the need for finality of judgments). Rather, the lower court's equity power only enabled the court to review the settlement agreement and enforce its terms.

With regard to the trust and insurance policies, the property settlement agreement provided:

26. Husband and wife shall retain as his or her exclusive possession all insurance policies issued in his or her respective names.

29. The Certificate of Deposit currently held in Hus-band's Trust Account with the First National Bank of Allentown which matures on March 13, 1986, together with accrued interests, shall be divided equally between the parties, and Wife thereafter shall relinquishes [sic] all right, title and or claim to said Trust Account of any portion thereof.

Paragraph 29 is precise. The parties agreed to divide equally the proceeds from the Certificate of Deposit held in the trust. Thereupon, the appellee agreed to relinquish "all right title and or claim" to the trust. Regardless of whether the insurance policies remained in the trust at the time the agreement was executed, the simple fact is that the appellee relinquished any claim she had to them. The lower court had no authority to open the decree and amend paragraph 29 to include a provision for equal division of the insurance policies. Neither can the lower court wrap itself in the cloak of equity and, in effect, force the appellant to pay for the oversight of appellee's trial counsel. By so doing, the lower court abused its discretion. The property agreement is clear: the parties, after extensive negotiation, agreed that, in exchange for half of the certificate of deposit proceeds, the appellee would relinquish all claims to the trust. We hold that parties' agreement must stand, and we vacate order of the lower court.[2]

Order vacated and petition dismissed. Jurisdiction is relinquished.

McEWEN, J., concurs in the result.

[2.] The facts of this case are somewhat akin to the facts of *Beamer v. Beamer*, 330 Pa.Super. 154, 479 A.2d 485 (1984), wherein the parties agreed to divide equally the net value of their marital abode. Appropriately ten months after the divorce decree was entered and prior to the husband paying the wife her half of the property's net value, the house burned to the ground. The property was insured in the husband's name for $20,000 in excess of the property's appraised value. The wife petitioned the lower court to open the decree, alleging her entitlement to 50% of the insurance proceeds. The lower court refused to open the decree.

Thereafter, we affirmed, ruling that the wife was not entitled to reopen a divorce judgment to obtain equitable distribution of proceeds of fire insurance on the marital home where, even though the house was insured for more than the value set in the divorce decree, her interest in the home had been litigated.

Similarly, we will not allow the appellee to open the divorce decree and relitigate her entitlement to 50% of the policies' surrender value where, even though the policies' value was greater than believed, the appellant did not act in a fraudulent manner and the agreement specifically disposes of the policies.