**William STOCKTON, Appellant,**

v.

**Elizabeth STOCKTON, Appellee.**

Superior Court of Pennsylvania.

Argued March 5, 1997.

Filed Aug. 6, 1997.

---

James J. Kayer, Carlisle, for appellant.

Thomas J. Williams, III, Carlisle, for appellee.

Before CIRILLO, President Judge Emeritus, and POPOVICH and HESTER, JJ.

POPOVICH, Judge.

This is an appeal from the final decree of equitable distribution of the Court of Common Pleas of Cumberland County. Herein, appellant claims that the lower court erred in failing to modify a Qualified Domestic Relations Order. We affirm.

The record reveals the following pertinent factual and procedural history as set forth in the opinion of the trial court:

1. Petitioner is an American citizen and Pennsylvania resident currently living and working in Norway.

2. Respondent, Elizabeth Stockton (Mrs. Stockton), is petitioner's former wife. She is employed by the United States Government and lives in McLean, VA.

3. This court entered a divorce decree in this matter on August 3, 1994, which incorporated a report by the Cumberland County Divorce Master dated June 16, 1994.

4. *On December 12, 1994, this court signed a QDRO under the above caption.*

5. The QDRO as entered awards Mrs. Stockton sixty (60) percent of the marital property component of Mr. Stockton's civil service pension.

6. The coverture fraction to be applied to the benefit has a numerator of 262 months and a denominator of the number of months of government service by Mr. Stockton at the time of his retirement.

7. The QDRO states, *"Husband shall designate the Wife as the 'surviving spouse' for all purposes under the retirement plan to include maximum survivor benefit without regard to whether Husband has a subsequent surviving spouse."*

8. The QDRO further states, *"Husband shall irrevocably elect the maximum survivor benefit option available in his bene-*

*fit plan. Wife shall be entitled to receive the maximum survivor benefit from Husband's retirement plan to include any benefit which might result from the death, before retirement, of Husband."*

9. Finally, the QDRO states, "The Husband waives any and all claims, demands, rights, title or interests that he may have or hereafter acquire in any future asset of the Wife including but not limited to the right to share in any pension or retirement benefits of the Wife . . ."

10. Mr. Stockton retired on October 2, 1995.

11. Mrs. Stockton currently receives $1,463.00 gross from Mr. Stockton's pension.

12. The Master's report herein, filed June 16, 1994, sets out several stipulations between the parties.

13. Stipulation number one states in part, "Husband will elect the survivor benefit option in favor of defendant wife and that the parties will thereafter be governed by the provisions of the employer with regard to survivor benefits."

14. Stipulation number four states, "Each of the parties has a separate pension which is not at issue here; defendant wife has a pension with her present employer with the federal government and the plaintiff husband has a pension from previous Army Reserve services that is now in pay status. *Both of these pensions are not at issue here and both parties waive any claim they have against the pensions....just described as to the other party."*

15. In the Master's report, finding of fact number 18 states, "Based on the information provided by husband's counsel after the hearing, assuming husband retires at age 65 . . . his monthly benefit, reduced by providing *maximum* survivor benefits, will be $3,325.00."

Trial Court Opinion at 1–3 (emphasis added). Although the Master's Report contained the stipulation which stated that appellant's Army Reserve pension was not in issue and that appellee waived all claims to the pension, the QDRO did not mention the Army Reserve pension or appellee's waiver.

Appellant married Donna Westguard Stockton on July 26, 1995. N.T., 12/18/95, pp. 9, 15. On September 8, 1995, appellant filed a petition for modification of the QDRO. In the petition, appellant alleged that the following two changes should be made to the QDRO: (1) The word "maximum" should be deleted from the section of the QDRO which addresses the survivor benefit election; and (2) a statement should be added which clarifies that appellee waives any claims to appellant's Army Reserve pension as agreed upon in Stipulation # 4 of the Master's Report. During the hearing on the petition, appellee stated that she never consented to anything less than maximum survivor benefits in relation to appellant's Civil Service pension. N.T., 12/18/95, p. 62. However, appellee stated that she did not intend to make any claim to appellant's Army Reserve pension. Appellee told the lower court that she would enter into a separate agreement which would serve to renounce any rights to the Army Reserve pension.

In its opinion, the lower court stated that it could not determine whether it had jurisdiction to modify the QDRO. Nonetheless, the lower court considered the merits of appellant's petition and found that the QDRO stated properly that appellee would receive the maximum survivor benefit annuity in the event that appellant predeceased appellee. Trial Court Opinion at 5. Furthermore, the lower court found that appellee agreed to waive all rights to appellant's Army Reserve pension. The lower court entered an order which denied appellant's motion to modify the QDRO. The order also stated that appellee renounced all claims to appellant's Army Reserve pension. Appellant filed a timely appeal to this Court.

Herein, appellant contends that the lower court erred in denying his petition to modify the QDRO. Appellant claims that the section of the QDRO which addresses the survivor benefits of his Civil Service pension must be modified in order to reduce appellee's allocation of the survivor benefits. Under the terms of the QDRO, appellee will receive the full amount of appellant's pension if appellant predeceases her.[1] Appellant con-

---

1. Pursuant to appellant's employer's regulations,

it is possible to allocate the survivor benefits

tends that the survivor benefit section must be modified because (1) the QDRO is inconsistent with the Master's report; (2) the QDRO does not reflect the parties' intentions; and (3) appellant's attorney overstepped his authority by failing to inform appellant of the proposed QDRO.[2] Appellant's Brief at 6.

■ Before this Court can address the merits of appellant's appeal, we must first determine if the lower court had jurisdiction to review the petition for modification. Pursuant to 42 Pa.C.S.A. § 5505, the trial court "upon notice to the parties may modify or rescind any order within thirty days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." The lower court's authority under 42 Pa.C.S.A. § 5505 to modify or rescind an order "is almost entirely discretionary; this power may be exercised *sua sponte,* or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal." *Justice v. Justice,* 417 Pa.Super. 581, 612 A.2d 1354, 1357 (1992).

■ Although 42 Pa.C.S.A. § 5505 gives the trial court broad discretion, the trial court may consider a motion for reconsideration only if the motion is filed within thirty days of the entry of the disputed order. *Burrell Constr. & Supply Co. v. Straub,* 440 Pa.Super. 596, 656 A.2d 529 (1995); *Ratarsky v. Ratarsky,* 383 Pa.Super. 445, 557 A.2d 23 (1989). After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of "extraordinary cause justifying intervention by the court." *Simpson v. Allstate Ins. Co.,* 350 Pa.Super. 239, 504 A.2d 335 (1986); *Orie v.*

*Stone,* 411 Pa.Super. 481, 601 A.2d 1268 (1992).[3]

■ This Court has stated repeatedly that 42 Pa.C.S.A. § 5505 applies to divorce decrees. 23 Pa.C.S.A. § 3332 states

A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S.A. § 5505 (relating to modifications of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree. Intrinsic fraud relates to testimony, whereas extrinsic fraud relates to matters collateral to the judgment which have the consequence of precluding a fair hearing or presentation of one side of the case.

Thus, it is clear that a trial court may not modify a divorce decree if more than thirty days has passed after the entry of the decree, in the absence of extrinsic fraud or other extraordinary causes. *Flowers v. Flowers,* 417 Pa.Super. 528, 612 A.2d 1064 (1992); *Ratarsky v. Ratarsky,* 383 Pa.Super. 445, 557 A.2d 23 (1989); *Holteen v. Holteen,* 413 Pa.Super. 591, 605 A.2d 1275 (1992).

■ This Court has not reviewed previously the specific issue of whether 42 Pa. C.S.A. § 5505 applies to a petition to modify a QDRO. Based on the broad language of the statute and this Court's repeated application of § 5505 to divorce proceedings, we find that the statute applies to a trial court's review of a QDRO. Accordingly, the trial court has broad discretion to modify or re-

---

between a former and a current spouse. N.T., 12/18/95, p. 6. However, the QDRO dictates that appellant is required to assign all of the survivor benefits of his civil service pension to appellee. Thus, appellant's current spouse would not receive any survivor benefits if appellant predeceases appellee.

2. Appellant argues that the coverture fraction should be applied to the survivor benefits so that

appellee would receive only a portion of appellant's pension benefits after he dies.

3. The only other time a trial court may modify an order after thirty days is to correct a clerical error or other formal error which is clear on the face of the record and which does not require an exercise of discretion. *First Pennsylvania Bank, N.A. v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 397 Pa.Super. 612, 580 A.2d 799 (1990).

scind a QDRO within thirty days of the entry of the QDRO, but after thirty days the trial court may reconsider a QDRO only if there is a showing of extrinsic fraud or other extraordinary cause.

Appellant concedes that he did not petition the lower court to modify the QDRO within thirty days of the entry of the order. Nonetheless, appellant argues that the trial court erred in failing to modify the QDRO to reflect that appellee is not entitled to "maximum" survivor benefits of his Civil Service pension. In support of his position, appellant claims that 23 Pa.C.S.A. § 3323(f) empowers the trial court to modify the QDRO at any time. 23 Pa.C.S.A. § 3323(f) states

> In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

In *Justice v. Justice*, 417 Pa.Super. 581, 612 A.2d 1354 (1992), this Court interpreted 23 P.S. § 401, the predecessor of 23 Pa.C.S.A. § 3323, and its interplay with 42 Pa.C.S.A § 5505. This Court held that although the trial court has broad equitable powers in divorce proceedings, the trial court is bound by the time limitation set forth in 42 Pa. C.S.A. § 5505. *Id.*

Because appellant filed the petition for modification more than thirty days after the entry of the QDRO, the trial court lacked jurisdiction to modify his petition absent an allegation of extrinsic fraud or other "extraordinary cause." Accordingly, we must review the record to find whether there is any evidence of extrinsic fraud or other extraordinary cause.

■ In his brief, appellant claims that the QDRO must be modified because his attorney did not communicate adequately with him about the final draft of the QDRO.

We find that appellant has failed to provide any evidence of extrinsic fraud. In *Holteen v. Holteen*, 413 Pa.Super. 591, 605 A.2d 1275 (1992), a party petitioned the trial court to open a divorce decree where the parties made a mutual mistake of fact as to the value of the marital residence. This Court held that the trial court did not have jurisdiction to open the decree because the petition was filed more thirty days after entry of the decree and the allegation of mutual mistake did not constitute extrinsic fraud. *Id.* Thus, appellant's misunderstanding about the terms of the agreement is not sufficient to permit the lower court to open the QDRO.

Second, appellant's dissatisfaction with his counsel does not empower the lower court to modify the QDRO. In *Ratarsky v. Ratarsky*, 383 Pa.Super. 445, 557 A.2d 23 (1989), this Court clarified that a party can not attribute their own attorney's inadequate performance to the other party and label such performance as fraud. *Id.*

In the present case, appellant's claims of mistake and inadequate representation do not amount to fraud or any other "extraordinary cause." Thus, the lower court lacked jurisdiction to entertain appellant's motion to modify the QDRO. Accordingly, we affirm the lower court's denial of appellant's petition.

Decree affirmed.