J-A14006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THOMAS M. GAUBY, JR., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGELA M. GAUBY, NOW ANGELA M. BRODI, | |
| Appellant | No. 1718 MDA 2014 |

Appeal from the Order Entered September 8, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 13-20918

BEFORE:  BENDER, P.J.E., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:　　　　　　**FILED JULY 17, 2015**

Angela M. Gauby, now Angela M. Brodi, (Wife) appeals from the September 8, 2014 order that denied her "Petition for Special Relief in the Nature of a Request to Vacate the Post Nuptial Agreement for Lack of Disclosure."  Wife's arguments on appeal concern her allegations that Thomas M. Gauby (Husband) did not provide full and fair disclosure related to the value of his pension.  We affirm.

We begin by setting forth the trial court's recitation of the facts, which provides:

> The instant action concerns a Post Nuptial Agreement entered into between the parties on September 11, 2013, and

_____

[*] Retired Senior Judge assigned to the Superior Court.

merged into the divorce decree entered on February 28, 2014. The parties in the instant action were married on October 21, 2000, in Berks County, Pennsylvania. In August of 2013, the Defendant (hereinafter "Wife") informed the Plaintiff (hereinafter "Husband") that she desired to divorce him The parties met together, without counsel, and discussed dissolution of their real and personal property, including disposition of the parties' respective pension and retirement accounts. As a result of that meeting, Wife prepared a document which she titled "Divorce Agreement[.]" Wife listed "His pension(s) w/ Amity Township" in the Divorce Agreement under "Tom's Financial Obligations[.]" She also listed "Her 403(b) with Morgan Stanley" under "Angie's Financial Obligations[.]" The Divorce Agreement contained detailed information regarding bank accounts, debts of the parties, personal property and other assets and obligations of the parties. Subsequently, Husband produced this document to his counsel for the preparation of the Post Nuptial Agreement. Husband's counsel prepared the Post Nuptial Agreement which the parties executed on September 11, 2013. Page One of the Post Nuptial Agreement contains language that Wife has been advised to seek representation and has been provided sufficient time to seek counsel and review the Agreement. The Post Nuptial Agreement also provided that "the parties shall retain any pension(s) and retirement accounts, savings and checking accounts in their respective names. Each party waives any claim against the other part[y's] pension, retirement accounts, savings and/or checking accounts...[.]"[] The Praecipe to Transmit the Record was filed on January 7, 2014 and this Court signed the Divorce Decree on February 28, 2014.

After the parties' divorce was finalized, Wife consulted an attorney and on April 10, 2014, Wife filed a Petition for Special Relief in the Nature of a Request to Vacate the Post-Nuptial Agreement for Lack of Disclosure. Wife alleges that Husband failed to disclose the value of his pension and this value should have been included in the property division. Husband alleges that neither of the parties knew the value of Husband's pension at the time of the Agreement and that the Agreement was entered into without any fraud, coercion, duress or undue influence by either of the parties. This Court held a brief hearing on Wife's Petition on June 25, 2014 and on September 8, 2014, issued an Order denying Wife's Petition.

Trial Court Opinion (T.C.O.), 1/2/14, at 1-2.

Wife appealed from the denial of her petition and timely responded to the court's order to file a concise statement of errors complained of on appeal. She now raises the following issues for our review:

1. Did the Trial Court err in finding that [Wife] had not overcome the presumption of disclosure raised by the Post Nuptial Agreement's statement of full disclosure when [Husband] made no disclosure, when no value was ever suggested for [Husband's] police pension, and [Wife] had no ability to know the value of the pension?

2. Did the Trial Court err in denying [Wife's] Petition for Special Relief in the Nature of a Request to Vacate the Post Nuptial Agreement despite clear evidence of lack of full and fair disclosure by [Husband] in not disclosing the value of his Amity Township Police Pension that only he could know?

3. Did the Trial Court err in denying [Wife's] Petition for Special Relief in the Nature of a Request to Vacate the Post Nuptial Agreement in light of the fact that [Husband] made no financial disclosure whatsoever when the caselaw requires affirmative disclosure of relevant financial information?

4. Did the Trial Court err in denying [Wife's] request that the value of the undisclosed police pension martial [*sic*] asset be disclosed by [Husband] for the consideration of the parties and the Court, and so [Wife] could determine the size and significance of [Husband's] non-disclosure?

5. Did the Trial Court err by not allowing a full and fair hearing on the record on [the] issue of the undisclosed martial [*sic*] asset, and the validity of the post nuptial agreement?

Wife's brief at 3.

Wife essentially claims that Husband failed to provide full and fair disclosure of the value of his pension, although she must initially challenge the trial court's refusal to strike and/or open the divorce decree. In

- 3 -

**Bingman v. Bingman**, 980 A.2d 155 (Pa. Super. 2009), this Court set forth

the following legal princples that guides our review of this case:

> Our standard of review is whether the trial court abused its discretion when it denied Wife's [petition]. **Egan v. Egan**, 759 A.2d 405 (Pa. Super. 2000). "Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Commonwealth v. Widmer**, 560 Pa. 308, 322, 744 A.2d 745, 753 (2000) (citation omitted).

> The Divorce Code provides:

> A motion to open a decree of divorce or annulment may be made only within the period limited by 42 Pa.C.S. § 5505[4] (relating to modification of orders) and not thereafter. The motion may lie where it is alleged that the decree was procured by intrinsic fraud or that there is new evidence relating to the cause of action which will sustain the attack upon its validity. A motion to vacate a decree or strike a judgment alleged to be void because of extrinsic fraud, lack of jurisdiction over the subject matter or a fatal defect apparent upon the face of the record must be made within five years after entry of the final decree….

> > [4] "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S.A. § 5505.

> 23 Pa.C.S.A. § 3332.

**Id.** at 157.

Neither party disputes the fact that Wife failed to file her petition within 30 days of the entry of the divorce decree. *Melton v. Melton*, 831 A.2d 646, 651 (Pa. Super. 2003). Therefore, it is evident that she was required to prove extrinsic fraud. In the *Melton* decision, this Court explained the distinction between the filing of a petition to open or vacate the decree before or after the 30 day period, stating:

> In order to consider untimely-filed economic claims, the divorce decree must be either opened or vacated. *Justice [v. Justice]*, 612 A.2d [1354,] 1357 [(Pa. Super. 1992)]. Petitions to open the decree must be filed within 30 days. *Id.*, citing, 42 Pa.C.S.A. § 5505; *see also*, 23 Pa.C.S.A. § 3332. During this 30-day period, the court holds wide discretion to modify or rescind its decree. *Justice*, 612 A.2d at 1357. "The trial court's broad discretion is lost, however, if the court fails to act within 30 days. After this 30-day period, an order can only be opened or vacated if there is fraud or some other circumstance so grave or compelling as to constitute extraordinary cause justifying intervention by the court." *Id.* (citations omitted). … Moreover, a general plea to economic justice will not satisfy the stringent standard set forth above. *Id. After 30 days, the divorce decree may be vacated only as a result of extrinsic fraud, lack of subject matter jurisdiction, or a fatal defect apparent on the face of the record*. 23 Pa.C.S.A. § 3332; *Justice, supra*.

*Id.* at 651 (emphasis added).

In its opinion here, the trial court recognized that "[t]here is no question that this [c]ourt has subject matter jurisdiction and no fatal defect [is] apparent on the face of the record…." T.C.O. at 4. Therefore, the remaining issue was "whether there was extrinsic fraud by Husband [in] not disclosing the value of his pension when neither party was aware of the value." *Id.* The court further explained that:

It is abundantly clear to this Court that Husband did disclose the fact that he had a pension. Wife was aware of the pension and Wife was also aware of the fact that neither she[] nor Husband knew the value of Husband's pension. This Court finds that because Wife knew of the existence of Husband's pension and signed the Post Nuptial Agreement, of which she drafted the initial documents, Wife has waived any right she may have had to a full disclosure of the value of Husband's pension. It is apparent that Wife was aware that Husband did not disclose the value of his pension. This alleged lack of disclosure cannot constitute fraud or misrepresentation when Wife was aware there was no such disclosure and proceeded to finalize the Post Nuptial Agreement.

. . .

In this case, Wife has failed to meet her burden of proof to set aside the Post Nuptial Agreement. Wife has a college education. Wife was aware of the existence of Husband's pension. Additionally, Wife played an integral part in the creation of the terms of the Post Nuptial Agreement. She negotiated with Husband for the terms of the Post Nuptial Agreement whereby Wife retained her retirement plan and Husband retained his. Wife freely chose to represent herself leading up to the execution of the Agreement and freely chose to enter into the Agreement. As such, this Court does not find the Post Nuptial Agreement to be invalid where at the time the Agreement was signed, Wife had specific knowledge that Husband had not disclosed the value of his pension because neither of the parties knew the value of the pension. Wife was aware Husband had not disclosed the value of his pension and this Court cannot find Wife was induced to enter the agreement through fraud or misrepresentation. The record is devoid of evidence of extrinsic fraud and this Court has properly denied [Wife's] Petition.

T.C.O. at 4-6.

Much of Wife's argument in her first four issues centers on non-disclosure and on the fact that Husband did not provide Wife with at least an estimate of the worth of his pension. Wife relies on **Hess v. Hess**, 580 A.2d 357 (Pa. Super. 1990), wherein the husband estimated the value of a

property at $45,000 in connection with the parties property settlement agreement (PSA), even though he was negotiating its sale to a third party for $800,000. The suit brought by the wife alleged both fraud and breach of contract, seeking compensatory and punitive damages. On appeal, this Court stated that "[f]air and full disclosure [relating to a PSA] … requires that a reasonable estimate of the worth of the assets must be attempted so that the general financial resources of the parties are not obscured." *Id.* at 359. Therefore, because the husband did not even attempt to disclose the real value of the property, this Court determined that this evidence was sufficient to find that the husband had breached the PSA. This Court also determined that sufficient evidence was presented for the jury to find that the husband had committed fraud. However, the *Hess* case does not involve whether fraud was intrinsic or extrinsic in relation to the opening or vacating of a divorce decree. The case is therefore not applicable to the issue before us.

Wife also relies on *Nitkiewicz v. Nitkiewicz*, 535 A.2d 664 (Pa. Super. 1988), a case in which this Court held that the husband had failed to disclose to the wife the amounts he earned from a second source and, therefore, had not provided full and fair disclosure relating to a postnuptial agreement. The Court noted that although "full and fair disclosure does not require disclosure of the exact amount of property, … there must be a sufficient disclosure of assets to allow the other party to make an intelligent decision concerning the rights which will be given up under the terms of the

agreement." ***Id.*** at 667. Again, the ***Nitkiewicz*** case does not involve a petition to vacate or open the decree and provides no discussion about extrinsic or intrinsic fraud, which Wife here must prove in order to allow the decree to be opened.

In response, Husband specifically addresses the extrinsic fraud that Wife was required to prove so that the decree could be vacated or opened. We note that in the ***Justice*** case, this Court quoted our Supreme Court's discussion in ***McEvoy v. Quaker City Cab Co.***, 110 A. 366 (Pa. 1920), which distinguished intrinsic fraud from extrinsic fraud, stating:

> By the expression 'extrinsic or collateral fraud' is meant some act or conduct of the prevailing party which has prevented a fair submission of the controversy. Among these are the keeping of the defeated party away from court by false promise or compromise, or fraudulently keeping him in ignorance of the action. Another instance is where an attorney without authority pretends to represent a party and corruptly connives at his defeat, or where an attorney has been regularly employed and corruptly sells out his client's interest. The fraud in such case is extrinsic or collateral to the question determined by the court. The reason for the rule is that there must be an end to litigation; and, where a party has had his day in court and knows what the issues are, he must be prepared to meet and expose perjury then and there: ***Pico v. Cohn***, 91 Cal. 129 [25 P. 970 (1891)]. Where the alleged perjury relates to a question upon which there was a conflict, and it was necessary for the court to determine the truth or falsity of the testimony, the fraud is intrinsic and is concluded by the judgment, unless there be a showing that the jurisdiction of the court has been imposed upon, or that by some fraudulent act of the prevailing party the other has been deprived of an opportunity for a fair trial. ***Bleakley v. Barclay***, 75 Kansas 462 [89 P. 906 (1907)].

***Justice***, 612 A.2d at 1358-59 (quoting ***Fenstermaker v. Fenstermaker***, 502 A.2d 185, 188 (Pa. Super. 1985)).

Husband also relies on **Paroly v. Paroly**, 876 A.2d 1061 (Pa. Super. 2005), which directs that "[i]f an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation then this presumption can be rebutted if it is proven by clear and convincing evidence." **Id.** at 1066 (quoting **Simeone v. Simeone**, 581 A.2d 162, 167 (Pa. 1990)). Based on this caselaw, Husband contends that the burden of proof was on Wife and that she failed to prove that he committed extrinsic fraud by not revealing the value of his pension.

To further support this proposition, Husband relies on **Ratarsky v. Ratarsky**, 557 A.2d 23 (Pa. Super. 1989), a case dealing with the "alleged concealment of the cash surrender value of … insurance policies." **Id.** at 25. This Court stated that "[e]ven assuming *arguendo* that the [husband] did conceal the cash surrender value [of the policies], the [husband's] acts did not constitute extrinsic fraud under the Divorce Code." **Id.** Rather, the opinion states that extrinsic fraud was not proven because the wife "knew of the policies['] existence and should have *specifically* inquired concerning their cash surrender value." **Id.** at 26 (emphasis in original). Thus, the **Ratarsky** Court concluded that without proof of extrinsic fraud the trial court had no authority to vacate the divorce decree.

Here, as quoted above, the trial court followed this same line of reasoning. Both parties knew about the other's pension/retirement account,

but did not know about the values contained in the accounts. Nor did they inquire about these amounts. Rather, the parties entered into the PSA without raising these questions. Moreover, nothing appears in the record to show that Husband intentionally misled Wife. Accordingly, we conclude that Wife's first four issues that revolve around her allegations of non-disclosure are without merit. Wife failed to convince this Court that she had proven extrinsic fraud existed that would have allowed the trial court to open/vacate the divorce decree when the petition was filed beyond the thirty day time period.

In her last issue, Wife argues that the trial court did not provide for a full and fair hearing on the non-disclosure of the value of Husband's pension. As a result, Wife claims that the trial court made "groundless assumptions" about Husband's lack of knowledge of the value of his pension and that Wife knew that Husband did not know the value of his pension. Wife relies on *McClenen v. McClenen*, 193 A. 83, 85 (Pa. Super. 1937), which states that "[t]he orderly course was to have a full hearing on the merits, make findings of fact from the evidence received in court, and on the basis of those findings, enter a decision and order." Thus, Wife asserts that because the trial court abdicated its factfinding duty, we should remand for a hearing.

This we will not do. It was the duty of Wife, as Appellant, to provide a complete record so that this Court is able to review what occurred below. Although the trial court mentions that it "held a brief hearing on Wife's

- 10 -

[p]etition on June 25, 2014[,]" T.C.O. at 2, no transcript of that hearing is provided in the certified record.

> [I]t remains the appellant's responsibility to ensure that a complete record is produced for appeal. Inclusion in the reproduced record is not an acceptable substitute for the original certified record. The failure of the appellant to ensure that the original record certified for appeal contains sufficient information to conduct a proper review may constitute a waiver of the issues sought to be examined. ***Stewart v. Owens-Corning Fiberglas***, 806 A.2d 34, n.3 (Pa. Super. 2002) (citations omitted).

***Kessler v. Broder***, 851 A.2d 944, 950 (Pa. Super. 2004). Since Wife failed to provide a transcript of the "brief hearing," this Court is unable to determine whether a full and fair hearing was held and whether Wife, who had the burden of proof in this matter, provided support for her allegations of a lack of full disclosure that rose to the level of extrinsic fraud. Accordingly, due to Wife's failure to provide a complete record, we are unable to assess the merits of her last issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015