J-A19028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ADAM R. KIDAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRACY SCHNEIDER | : | |
| | : | |
| Appellant | : | No. 1530 MDA 2023 |

Appeal from the Decree Entered September 29, 2023
In the Court of Common Pleas of Lancaster County Civil Division at
No(s): CI-17-05950

BEFORE:     PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED: OCTOBER 25, 2024**

Tracy Schneider ("Wife") appeals from the divorce and equitable distribution decree. We affirm.

As Wife and Adam R. Kidan ("Husband") are familiar with the procedural history and evidence presented, we need not reiterate them in detail. In sum, the parties were married for fourteen years before separating on June 26, 2017, the same day Husband filed the underling divorce complaint.[1] They have one child who is emancipated. The trial court conducted a two-day divorce hearing in May 2023, at which time Husband was fifty-eight years old

---

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court opinion stated the parties were married for **sixteen** years and seven months, but we calculate the duration between the marriage (November 16, 2002) and separation (June 26, 2017) to be **fourteen** years and seven months. *See* Trial Court Opinion, 9/29/23, at 4, 23.

and Wife was fifty-seven. The trial court summarized the relevant evidence as follows. At the time of the marriage, Wife worked as a real estate broker, but following the birth of their child in 2003, was primarily a homemaker.

As Wife's sole issue on appeal relates to the valuation of the parties' business, we review the record evidence in detail. In 2011, Husband formed Chartwell Staffing Services Inc. ("Chartwell"), a subchapter S corporation in the business of "hiring temporary employees to work in factory and warehouse distribution environments." Trial Court Opinion, 9/29/23, at 11, 15. "Although Husband started the company, all of the shares were placed into Wife's name" due to the numerous "opportunities for women-owned businesses." *Id*. Nevertheless,

> [a]t the time the business was formed, Wife did not have any experience in the staffing industry, and it was Husband who had already been involved in one staffing operation. Husband was the main person in charge of day-to-day operations and Wife never really had a role in the company.

*Id*. (record citations omitted). Chartwell successfully grew and "eventually had a nationwide presence. At the height of the company [*sic*]there were fifty branches in thirty-two states." *Id*. (record citations omitted). "[B]y the latter part of their marriage; the parties enjoyed an upper-class lifestyle due to Chartwell." *Id*. at 9.

As stated above, the parties separated in June 2017. Around that time,

> Husband believed that their lender, Madison Resource Funding ( . . . "Madison"), was trying to take over Chartwell. At that time, Chartwell was Madison's largest customer, [representing] about 60% of [its] business. [Husband] left the company in February of

2019, taking a number of key employees with him and leaving Chartwell in the hands of Wife who never had a role in the company. . . .

[B]efore Husband abruptly left[,] Chartwell was in financial trouble. Its net working capital was dangerously low. In February 2019, Husband acknowledged that the company would be unable to meet its ongoing operations, would not be able to pay staff [or] expenses, and . . . would need to begin laying off personnel. That same month, the company was forced to take out a $4.5 million loan at 27% interest to stay afloat. By June 2019, a mere four months later, the proceeds of that loan were depleted, and its net working capital stood at less than $1 million. . . .

In July of 2019, Chartwell was in default of obligations to Madison, and Madison was prepared to institute enforcement actions which would have resulted in the takeover of the company and personal obligations on the part of Husband and Wife of approximately $17.6 million. Wife signed a Stock Option Purchase Agreement [("Option Agreement")] to sell 75% of her shares to Madison.[2] In exchange, Madison agreed to not enforce the personal loan obligations[,] Wife received [a lump sum of] $75,000[ and a salary of $250,000 per year for five years for consulting,] and [she] was prohibited from competing against Chartwell for eight years. Consequently, Madison paid $1.25 million[3] for 75% of the stock in July 2019. Wife did not consult with Husband regarding the Option Agreement. . . .

*Id*. at 12-13 (footnotes added, record citations omitted).

The trial court conducted a divorce hearing on May 24 and 25, 2023.

The parties presented "diametrically opposed positions on the value of

Chartwell" and each presented an expert in forensic business valuation. *Id*.

_____

[2] Wife in fact executed the Option Agreement with Coast to Coast Staffing, LLC, which Wife describes as "a third-party affiliate of Madison." Wife's Brief at 9.

[3] We calculate the sum of $75,000 and five annual salaries of $250,000 instead to be $1.325 million.

at 11. According to Wife, the parties agreed to value the company as of 2019, although they could not agree on a specific date. *See* Wife's Brief at 10. Wife's expert witness, Andrew Kelly ("Wife's Expert"), calculated the net fair market value of Wife's 25% interest in Chartwell, as of December 31, 2019, to be $0. Wife's Expert reached this sum by first calculating Wife's 25% share to be worth $1,330,000, but deducting the value of Wife's personal goodwill, which it determined to be $1,523,000.[4] *See* Trial Exhibit 16, Wife's Expert's Report, 4/14/23, at 25-26; *see also* N.T., 5/25/23, at 369, 374.

On the other hand, Husband's expert witness, Scott Koman ("Husband's Expert"), estimated the fair market value of 100% of Chartwell as of June 30, 2019, to be $6,819,000. *See* N.T., 5/25/23, at 286. For ease of comparison, we calculate a 25% share of this value to be $1,704,750.

At the conclusion of the hearing, the trial court directed the parties to file, within thirty days of the completion of the transcripts, briefs in support of their positions. The transcripts were filed, and more than two weeks *after* the trial court's deadline, both parties filed their submissions. Wife's memorandum of law averred that, post-hearing, Chartwell was sold:

> Circumstances subsequent to trial simply confirm [Wife's Expert's] stated value. In July 2023,[5] the majority shareholder in Chartwell decided to sell the business over any objection by Wife

---

[4] Wife's Expert's report showed a net value of negative $193,000, but at the hearing, construed the net value to be $0. *See* N.T., 5/25/23, at 375.

[5] In her subsequent motions and appellate brief, Wife states the sale occurred in *June* 2023.

and without her cooperation. The proceeds of the sale were insufficient to satisfy all present liabilities includes monies owed to Madison. Madison ended up taking a loss on the business, and Wife received nothing for her 25%.

Wife's Memorandum of Law, 8/3/23, at 14 (footnote added).

On September 29, 2023, the trial court issued the underlying divorce and equitable distribution decree. With respect to the value of Wife's 25% share of Chartwell, the trial court credited Wife's Expert's initial determination — that her share was worth $1,330,000 — but disagreed with the amount attributed to her goodwill. *See* Trial Court Opinion, 9/29/23, at 13. The trial court instead deducted $380,750 for goodwill, arriving at a valuation of $949,250. As Wife points out on appeal, this asset was the largest marital asset. The trial court awarded 60% of all the marital assets to Wife and 40% to Husband.[6]

_____

[6] The trial court set forth this schedule of distribution of marital assets:

| Asset | Value | Husband | Wife |
|---|---|---|---|
| (l) Marital Residence [(net equity after outstanding mortgage deducted)] | | $ | $200,649 |
| (2) Escrow Account | $759,410 | $669,095 | $90,315 |
| (3) Interim Distribution to parties April 2023 | $150,000 | $75,000 | $75,000 |
| *(4) Chartwell Staffing* | *$949,250* | | *$949,250* |
| (5) Managed Facilities Solutions | $122,880 | $122,880 | |

*(Footnote Continued Next Page)*

Just before the end of the thirty-day period for motions for reconsideration, Wife filed a motion for reconsideration and a motion to open the record, both averring that new evidence of the sale of Chartwell would impact the valuation of the marital estate. Wife claimed that: (1) on June 26, 2023, without her consent, the majority shareholder of Chartwell sold it to a competing staffing company; (2) Wife was not aware of the potential sale at the time of the divorce hearing; (3) the sale price was considerably less than the amount Chartwell owed to Madison, and as a result, Wife received nothing from the sale; and thus (4) for equitable distribution purposes, the value of Chartwell should be amended to $0. The trial court did not rule on either motion, and Wife filed a timely notice of appeal.[7] Both the trial court and Wife have complied with Pa.R.A.P. 1925(b).

Wife presents one issue for our review:

---

| (6)2014 Mercedes E320 | $11,500 | | $11,500 |
|---|---|---|---|
| (7) Payment from [O]ption [A]greement | $75,000 | | $75,000 |
| (8) Rolex | $12,500 | $12,500 | |
| (9) Wine Collection | $55,000 | $55,000 | |

* * * *

Order, 9/29/23, at 1 (emphases added).

[7] **See** Pa.R.C.P. 1930.2(b) (providing that if the trial "court does not grant [a] motion for reconsideration within the time permitted, the time for filing a notice of appeal will run as if the motion for reconsideration had never been presented to the court").

Did the trial court err as a matter of law, abuse its discretion, and fail to effectuate the equitable aims of the [D]ivorce [C]ode[8] by forgoing [Wife's] motion for reconsideration and motion to open record where said motions identified circumstances outside of [Wife's] control occurring after the closure of the record that materially impact the value of [Wife's] marital interest in Chartwell . . . such that, in failing to open the record to take additional testimony, the trial court's order of equitable distribution materially inflates and distorts the value of [Wife's] interest in Chartwell . . . and, as such, fails to effectuate economic justice?

Wife's Brief at 4 (unnecessary capitalization omitted).

Wife avers that, with respect to the valuation of Chartwell in its equitable distribution order, the trial court improperly "ignore[d] developments occurring post-trial that materially affect the value of the primary marital asset." *Id*. at 16. This Court has stated:

A trial court has broad discretion when fashioning an award of equitable distribution. Our standard of review . . . is "whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This Court will not find an "abuse of discretion" unless the law has been "overridden or misapplied or the judgment exercised" was "manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. "[W]e measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights."

**Biese v. Biese**, 979 A.2d 892, 895 (Pa. Super. 2009) (citations omitted).

"The Divorce Code does not specify a particular method of valuing assets." Thus, "[t]he trial court must exercise discretion and rely

---

[8] 23 Pa.C.S.A. §§ 3101-3904.

on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." When "determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property."

*Id*. at 897 (citations omitted).

The Divorce Code provides:

A motion to open a decree of divorce or annulment may be made only within [thirty days, pursuant to 42 Pa.C.S.A. § 5505] and not thereafter. The motion may lie where it is alleged . . . that there is new evidence relating to the cause of action which will sustain the attack upon its validity.

23 Pa.C.S.A. § 3332. This Court has stated that under 42 Pa.C.S.A. § 5505, a trial court has broad discretion to modify an equitable distribution decree within thirty days of its entry. *See Stockton v. Stockton*, 698 A.2d 1334, 1337 (Pa. Super. 1997).

The trial court opinion did not address Wife's petition to open the record.[9] Nevertheless, we determine that we may reach the merits of Wife's issues based on our review of the record and her brief. We reiterate that the parties separated in June 2017 and the trial court conducted the divorce hearing in May 2023. On appeal, Wife acknowledges that she and Husband

---

[9] Wife filed her motions to open the record and for reconsideration on Friday, October 26, 2023, just before the thirty-day deadline of Monday, October 30, 2023. Our review of the certified record shows that the first page of the motion to open the record bears a hand-written notice, stating "These are too late. Judge isn't signing them. Thanks!" Motion to Open Record, 10/26/23. In the absence of any formal adoption of this statement by the trial court nor indication that the parties received notice of it, we do not consider this statement further.

had an "***agreement*** to value the business in 2019, [although] the parties could not agree as to the precise date in 2019." Wife's Brief at 10 (emphasis added). Wife properly points out that her "expert valued the business as of year-end 2019 whereas Husband's expert valued the business as of June 30, 2019, immediately prior to the execution of the [O]ption [A]greement." ***Id***. Furthermore, in her discussion of the parties' competing evidence as to the value of Chartwell, Wife discusses only the events through 2019, and not thereafter. ***See id***. at 6-10. Wife does not claim she presented any evidence concerning Chartwell's value after 2019. Importantly, Wife makes no argument why the trial court should now consider any new evidence arising in 2023, in light of the parties' agreement to a valuation date within 2019. Indeed, at the 2013 hearing, both parties' evidence of Chartwell's value was limited to 2019. Given the lack of any such discussion, we conclude that Wife has not established an abuse of discretion or error by the trial court in not opening the record and not granting reconsideration.

Accordingly, we affirm the divorce and equitable distribution decree.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/25/2024

- 9 -