J-A06007-23
J-A06008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| CAITLIN R. SKENDER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL R. SKENDER | : | No. 482 WDA 2022 |

Appeal from the Order Dated March 31, 2022
In the Court of Common Pleas of Butler County Domestic Relations at
No(s): Docket No. 41948,
PACSES No. 593300990

| | | |
|---|---|---|
| DANIEL R. SKENDER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAITLIN R. SKENDER | : | |
| | : | |
| Appellant | : | No. 483 WDA 2022 |

Appeal from the Order Dated March 31, 2022
In the Court of Common Pleas of Butler County Domestic Relations at
No(s): Docket No. 41975

BEFORE: OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.: **FILED: DECEMBER 12, 2023**

Appellant, Caitlin R. Skender (Mother), appeals from separate orders

dated March 31, 2022. One order, docketed in this Court at 482 WDA 2022,

---

[*] Retired Senior Judge assigned to the Superior Court.

denied Mother's request to reconsider court-ordered child support owed to Appellee, Daniel R. Skender (Father) for the parties' two minor children. The second order, docketed in this Court at 483 WDA 2022, terminated Father's claim for child support at a different trial court docket. For the reasons that follow, we consolidate the appeals,[1] affirm the trial court's decision to award child support to Father, and remand for the trial court to formally consolidate the two actions and completely merge the separate trial court dockets.

We summarize the facts and procedural history of this matter as follows. Mother and Father are the parents of two minor children (who were six and four years old at the time of the hearings before the trial court). The parties share physical custody of their children under a custody agreement dated February 8, 2019. As mentioned, each party separately filed for child support against the other party, with each action docketed separately before the trial court. A domestic relations officer ("conference officer") held a hearing on

---

[1] We *sua sponte* consolidate the appeals because they involve related issues and parties. **See** Pa.R.A.P. 513 ("[…W]here the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal."). As will be discussed, Mother filed a complaint for child support on July 30, 2021. The trial court docketed the case as number 41948 (hereinafter "Mother's docket") and we docketed Mother's appeal in that case as 482 WDA 2022. On August 23, 2021, Father filed a separate claim for child support (essentially a counterclaim to Mother's support action) which was docketed in the trial court at number 41975 (hereinafter "Father's docket"). We have docketed Mother's appeal in that case as 483 WDA 2022. Mother, as the appealing party in both cases, has filed separate briefs with this Court. For ease of discussion and citation, we refer to Mother's brief at 482 WDA 2022 as "Mother's Brief on Mother's Docket" and we refer to Mother's Brief at 483 WDA 2022 as "Mother's Brief on Father's Docket."

both claims August 24, 2021. At the hearing, and throughout subsequent proceedings on these matters, the parties did not dispute each other's incomes and have always acknowledged that Mother has a larger income than Father. On September 3, 2021, upon the recommendation of the conference officer, the trial court entered a support order in favor of Mother and against Father at Mother's docket. On the same date, the trial court also entered an order at Father's docket dismissing his claim for child support without prejudice, finding that Father was not entitled to support and ordering the "case … closed with a zero balance." Order of Court, Father's Docket, 9/3/2021 at *1. The trial court also noted that "if a demand for a *de novo* hearing is filed … both cases will be scheduled [together] and heard concurrently." ***Id.*** On September 3, 2021, Father filed a timely demand for a *de novo* hearing at Mother's docket only. Consequently, the trial court simultaneously scheduled a *de novo* hearing at both Mother's docket and Father's docket. ***See*** Order of Court, Father's Docket, 9/23/2021, at 1.

The trial court held a single hearing on November 10, 2021, wherein each party testified. Counsel stipulated to each party's annual gross income. ***See*** N.T., 11/10/2021, at 3 ("Father makes $48,000.00 a year. Mother's income is at $62,926.50 a year, gross annual."); ***see also id.*** at 25 ("[Mother's] gross income is not really disputed, but [counsel is unsure] the calculation of [her] pension and the dues … is correct."). Mother also presented evidence of her childcare expenses for the children. On February 16, 2022, the trial court filed identical findings of fact, captioned with both

Mother's docket number and Father's docket number, at both dockets. The trial court also filed separate orders at each docket on February 16, 2022. At Mother's docket, the trial court entered an order awarding Mother child support, and arrears, from Father. At Father's docket, the trial court entered an order "terminat[ing the court's] interest in [Father's] matter." *See* Order of Court, Father's Docket, 2/16/2022, at *1.

On March 18, 2022, Father filed a motion for reconsideration at Father's docket, but not at Mother's docket. Citing Pa.R.C.P. 1910.16-4,[2] Father argued that the trial court erred as a matter of law by ordering him to pay Mother child support when he was "the lesser wage earner." Father's Motion for Reconsideration, 3/18/2022, at 5-6, ¶ 9. Father further argued that the trial court erred by dismissing his complaint for support and closing his case. *Id.* at 6, ¶ 12. On the same day, the trial court filed an order expressly granting reconsideration at Father's docket only. Thereafter, on March 31, 2022, the trial court docketed separate orders at both Mother's docket and Father's docket that vacated the court's earlier February 16, 2022 orders "upon review of the testimony presented at the [November 10, 2021] hearing *de novo*, along with reconsidering the applicability of Pa.R.C.P. 1910.16.4 to

---

[2] Rule 1910.16-4 provides, in pertinent part, that "when a child spends an equal number of annual overnights with the parties[, t]he trier-of-fact **shall not** require the party with the lower monthly net income to pay basic child support to the party with the higher monthly net income. However, this subdivision shall not preclude the entry of an order requiring the party with less monthly net income to contribute to additional expenses pursuant to Pa.R.C.P. No. 1910.16-6." Pa.R.C.P. 1910.16-4(2)(ii) (emphasis added).

the undisputed facts regarding each party's average net monthly income[.]" Order of Court, 3/31/2022, at *1.  Moreover, each order docketed on March 31, 2002 cross-referenced the other party's docket.  *Id.*   The trial court entered two additional orders, one on each docket, on March 31, 2022.  At Father's docket, the trial court ordered Mother to pay Father $484.00 per month in child support and $44.00 per month for arrears.  Order of Court, Father's Docket, 3/31/2022, at 2.  The order further directed that, "[Mother] shall provide to [Father] the receipts for all childcare expenses[, Father shall pay his proportional share of childcare expenses directly to [Mother], within thirty (30) days of receiving the receipt [and] reimburse [Mother] for his proportional share of childcare expenses incurred since July 30, 2021." *Id.* at 3.   At Mother's docket, the trial court entered an order "based upon [r]econsideration under the separate order of court dated March 31, 2022, [Father's support] obligation in this matter shall terminate effective July 30, 2021" because the trial court "determined that an obligation is not due [Mother] as the parties share custody equally and [her] income exceeds [Father's]."  Order of Court, Mother's Docket, 3/31/2022, at 1.   Mother filed timely motions for reconsideration, captioned with Mother's docket number and Father's docket number, at each docket.  On April 21, 2022, the trial court

denied relief in separate orders noted on each docket and Mother timely appealed both decisions.[3]

Before we examine the merits of Mother's appeals, however, we must address Mother's argument that the trial court lacked jurisdiction to reconsider its February 2022 orders at both trial court docket numbers. **See** Mother's Brief on Father's Docket, at 12-13 ("No reconsideration was ever requested [on Mother's docket] by either party, nor was the February 15, 2022 [o]rder at [Father's docket] modified, vacated or in any way changed within thirty (30) days of its entry" in contravention of 42 Pa.C.S.A. § 5505); **see also** Mother's Brief on Mother's Docket, at 12-13 (Father "filed a [m]otion for [r]econsideration on March 15, 2022 as it relates to his case only, at [Father's docket]. He did not file a [m]otion for [r]econsideration as to [Mother's] case

_____

[3] Mother filed separate notices of appeal, one at each docket, on April 28, 2022. Mother, however, failed to file corresponding concise statements of errors complained of on appeal as required pursuant to Pa.R.A.P. 1925(a)(2)(i). On May 17, 2022, the trial court ordered Mother to file a Rule 1925 concise statement within 21 days. **See** Trial Court Opinion, 7/8/2022, at 3. The docket reveals that Mother did not file a concise statements until June 17, 2022, or 30 days later. **See Commonwealth v. Schofield**, 888 A.2d 771, 774 (Pa. 2005) ("[F]ailure to comply with the minimal requirements of Pa.R.A.P.1925(b) will result in automatic waiver of the issues raised."). However, because the dockets further reveal that the prothonotary did not give the parties notice of the trial court's Rule 1925(b) order, we decline to find Mother's issues waived on appeal. **See In re L.M.**, 923 A.2d 505, 510 (Pa. Super. 2007) ("Because the docket does not show that notice of the court order to file a Rule 1925(b) statement was served on the parties, as required by Pennsylvania Rule of Civil Procedure 236(b), we decline to conclude that Mother has waived her issues on appeal."); **see also** Pa.R.C.P. 236(b). Moreover, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on July 8, 2022, addressing all of the issues set forth in Mother's Rule 1925(b) statement.

at [Mother's docket].  The [trial c]ourt granted reconsideration as to [Father's]

case only by order dated March 17, 2022.").

We have previously determined:

The effect which an application for reconsideration will have on the appeal process is addressed in Pa.R.A.P., Rule 1701.  This rule tolls the time for taking an appeal only when the court files "an order expressly granting reconsideration ... within the time prescribed by these rules for the filing of a notice of appeal." Phrased differently the trial court is permitted to grant reconsideration only if such action is taken during the applicable appeal period.  An order granting reconsideration will only be effective if it is made and entered on the docket before expiration of the applicable appeal period, 30 days from the entry of the order which is the subject of the reconsideration motion, and if it states that it is expressly granting reconsideration. It should be emphasized that the Rule requires reconsideration to be expressly granted.  It is insufficient for the trial court to merely set a hearing date on the reconsideration motion or issue a [r]ule to [s]how [c]ause.  Failure to "expressly" grant reconsideration within the time set by the rules for filing an appeal will cause the trial court to lose its power to act on the application for reconsideration. **See**: Note following Pa.R.A.P. 1701.

**Schoff v. Richter**, 562 A.2d 912, 913 (Pa. Super. 1989).  "If a court fails to

act on a timely reconsideration motion within the appeal period, it loses

jurisdiction to do so."  **Manufacturers & Traders Tr. Co. v. Greenville**

**Gastroenterology, SC**, 108 A.3d 913, 918 (Pa. Super. 2015) (internal

citation omitted); **see also** Pa.R.A.P. 903 ("[N]otice of appeal … shall be filed

within 30 days after the entry of the order from which the appeal is taken.").

"The time within which a trial court may grant reconsideration of its orders is

a matter of law...."  **Greenville Gastroenterology, SC**, 108 A.3d at 917

- 7 -

(citation omitted). "For questions of law, our standard of review is *de novo*, and our scope of review is plenary." **Id.** (citation omitted).

Moreover,

[p]ursuant to 42 Pa.C.S.A. § 5505, the trial court "upon notice to the parties may modify or rescind any order within thirty days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." The lower court's authority under 42 Pa.C.S.A. § 5505 to modify or rescind an order "is almost entirely discretionary; this power may be exercised *sua sponte*, or may be invoked by a request for reconsideration filed by the parties, and the court's decision to decline to exercise such power will not be reviewed on appeal." **Justice v. Justice**, 612 A.2d 1354, 1357 (Pa. Super. 1992).

\*          \*          \*

After the expiration of thirty days, the trial court loses its broad discretion to modify, and the order can be opened or vacated only upon a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of "extraordinary cause justifying intervention by the court." **Simpson v. Allstate Ins. Co**., 504 A.2d 335 (Pa. Super. 1986); **Orie v. Stone**, 601 A.2d 1268 (Pa. Super. 1992).

**Stockton v. Stockton**, 698 A.2d 1334, 1337 (Pa. Super. 1997).

We begin our analysis by considering Mother's claim that the trial court lacked jurisdiction to reconsider its February 2022 order at Father's docket. This claim rests on the contention that the trial court lost jurisdiction to entertain Father's request for reconsideration when it failed to act by affirmatively granting reconsideration within the applicable appeal period. Here, the support orders and findings of fact at issue were dated by the trial court as February 15, 2022. However, "an order is 'entered' when it has been

docketed and notice of the docketing has been given to the parties." ***Reeves v. Middletown Athletic Ass'n***, 866 A.2d 1115, 1120 (Pa. Super. 2004), *citing **Yeaple v. Yeaple***, 402 A.2d 1022, 1024 (Pa. 1979). Upon our review, the orders at issue were noted on the respective dockets on February 16, 2022, but there is no statement on the record that notice was given to the parties. As a technical matter, then, the commencement of the limiting appeal period was not triggered. ***See*** Pa.R.A.P. 108(a)(1) ("in computing any period of time under these rules involving the date of entry of an order by a court or other government unit, the day of entry shall be the day the clerk of the court or the office of the government unit mails or delivers copies of the order to the parties"). Regardless, the trial court entered an order expressly granting reconsideration on Father's docket on March 18, 2022, or 30 days after the February 16, 2022 order was first noted on the trial court's ledger. As such, because the appeal period was not triggered by proper entries on the trial court docket and because the trial court expressly granted reconsideration within 30 days of the date the subject order was first noted on the docket, we discern no impediment to the trial court's subsequent decision to revisit its February 2022 order.

Next, we consider the procedural conundrum created by Father's failure to seek reconsideration at Mother's docket, which serves as the basis for Mother's position that the trial court lacked jurisdiction to modify the February 16, 2022 order at Mother's docket. Father's motion to reconsider at Father's docket averred that the trial court erred as a matter of law in awarding Mother

support under Pa.R.C.P. 1910.16-4 when the evidence showed, and Mother conceded, that she earned more income than Father. Pa.R.C.P. 1910.16-4(2)(ii) precluded the trial court from requiring the lower monthly net income earner, Father in this case, to pay basic child support to the party with the higher monthly net income, or Mother. Because the undisputed evidence showed that Mother was the higher income earner and Rule 1910.16-4(2)(ii) prohibited an award of child support to her, the February 16, 2022 order entered at Mother's docket suffered from a fatal defect that was apparent upon the face of the record. *See, e.g., Danz v. Danz*, 947 A.2d 750, 756 (Pa. Super. 2008) ("Rule 1920.2(b) requires a trial court to ensure the record establishes venue is proper—either by residence, written agreement, or tacit agreement through participation—before directing entrance of a divorce decree. The divorce decree in this case suffers from 'a fatal defect apparent upon the face of the record' due to the fact that the trial court failed to comply with Rule 1920.2(b)."). For this additional reason, the trial court was justified in vacating the February 16, 2022 orders at both dockets after the 30-day general requirement for rescinding orders under Section 5505 expired.

Finally, with regard to the procedural posture of the case, we note the following. Pursuant to Pa.R.C.P. 213:

> (a) In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

(b) The court, in furtherance of convenience or to avoid prejudice, may, on its own motion or on motion of any party, order a separate trial of any cause of action, claim, or counterclaim, set-off, or cross-suit, or of any separate issue, or of any number of causes of action, claims, counterclaims, set-offs, cross-suits, or issues.

Pa.R.C.P. 213(a)-(b).[4]  "[U]nder Rule 213(a), a trial court has three options where pending actions involve either a common question of law or fact, or which arise from the same transaction: (1) ordering a joint trial or hearing on any matter at issue; (2) ordering the actions 'consolidated'; and (3) issuing other orders designed to avoid unnecessary costs or delay." **Kincy v. Petro**, 2 A.3d 490, 493 (Pa. 2010).  More specifically, our Supreme Court has recognized:

The term 'consolidation' is used in three different senses: First, where all except one of the several actions are stayed until one is tried, in which case the judgment in the one is conclusive as to the others; second, where several actions are combined into one and lose their separate identity and become a single action in which a single judgment is rendered; and, third, where several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment. Failure in many cases to clearly distinguish between these various uses of the word has caused no little apparent confusion in the decisions. Where a technical consolidation takes place, the result is that one verdict is rendered which is conclusive of the entire subject matter of the litigation. Consequently, different actions cannot be consolidated unless between the same parties and

---

[4] We note that subsection (e) of Rule 231 was preempted by federal law but is inapplicable instantly. **See Simmons v. Simpson House, Inc.**, 259 F. Supp. 3d 200, 211 (E.D. Pa. 2017) (Rule 213(e) is a rule of compulsory joinder, providing that wrongful death and survival actions may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial but the Pennsylvania Supreme Court has ruled that Rule 213(e) conflicts with the Federal Arbitration Act and is preempted).

- 11 -

involving the same subject-matter, issues, and defenses. But where separate actions in favor of or against two or more persons have arisen out of a single transaction, and the evidence by which they are supported is largely the same, although the rights and liabilities of parties may differ, it is within the discretion of the trial judge to order all to be tried together, though in every other respect the actions remain distinct and require separate verdicts and judgments.

\* \* \*

[S]eparate actions cannot be consolidated to the extent the actions lose their separate identities and become a single action what we will refer to as "complete consolidation"—unless the actions involve the same parties, subject matter, issues, and defenses.

*Id.* at 494 (internal citation omitted). Consolidation is permissible to avoid "multiple trials and proceedings involving common facts or issues arising from the same transaction or occurrence." Pa.R.C.P. 213, Comment. "The duplication of efforts is a benefit to both the parties and the courts." *Id.* Rule 213 was further promulgated for "the prevention of inconsistent verdicts ... the elimination of trial delays, speedier litigation, and the reduction of expenses for the parties." *See* 3 Standard Pa. Practice 2d § 19.17.

An appellate court applies an abuse of discretion standard to the trial court's decision regarding consolidation. *See Azinger v. Pennsylvania R. Co.*, 105 A. 87, 88 (Pa. 1918) ("The question is one that must necessarily be left to the discretion of the trial judge, and where the issues are the same and they arise out of the same transaction, and it does not appear the trial of the cases together would tend to place the objecting party at a disadvantage, or give an undue advantage to his adversary, the action of the court in ordering

the cases tried together will not be reversed."). Our Supreme Court has explained, therefore, the rules pertaining to consolidation hinge upon whether or not the separate identities of the actions have been erased. *See Rutta v. Oz*, 240 A.3d 156, at *2 (Pa. Super. 2020) (unpublished memorandum), *citing Azinger*, 105 A. at 88.

Here, upon our review of the record and applicable law, we conclude that the trial court abused its discretion regarding consolidation. At the outset, we observe that the two matters before us involve identical parties and their competing support claims concerning the same children. Moreover, while the parties expressed differing views about the evidence, the two cases never truly possessed separate and distinct identities. As set forth above, however, Father filed several documents at only one docket, but the trial court subsequently took action to enter orders at both dockets. For example, Father filed a demand for a *de novo* hearing at Mother's docket only, but the trial court entered an order at Father's docket scheduling a hearing based upon Father's demand at Mother's docket. *See* Order of Court, Father's Docket, 9/23/2021, at 1 ("On September 21, 2021, [Father's counsel] filed a [d]emand for *de novo* hearing on the reverse captioned case[.]"). Likewise, when Father filed a motion for reconsideration at Father's docket only, the trial court reconsidered its decision on Mother's docket and ultimately vacated its prior ruling by separate order. *See* Order of Court, Mother's Docket, 9/23/2021, at 1 ("[U]pon review of the testimony presented at the *de novo* hearing, along with reconsidering the applicability of Pa.R.C.P. 1910.16-4 to

the undisputed facts regarding each party's average net monthly income, it is hereby ordered that the order of court dated February 15, 2022 is vacated.") (emphasis and unnecessary capitalization omitted). While the trial court ultimately amended its original February 2022 orders at both dockets, questions have emerged as to whether it was proper for the court to do so given that procedural formalities that permit the court to revisit its earlier rulings were not strictly followed in both cases. We have resolved those inquiries but, in our view, these issues were entirely avoidable, posed a risk of inconsistent determinations, and have led to the unnecessary expenditure of considerable judicial resources.

In this matter, the parties, actions, subject-matter, issues, and defenses all clearly centered solely on identical questions of child support. As such, we conclude that the trial court abused its discretion in failing to completely consolidate the two actions. Hence, we remand this matter for the trial court to enter an order consolidating the matters and completely merging the two dockets into one. *Keefer v. Keefer*, 741 A.2d 808, 811 (Pa. Super. 1999) ("[W]here two actions are [completely] consolidated pursuant to Pa.R.C.P. 213(a) only one action retains its identity and the others are absorbed by it."). Having resolved the procedural anomalies in this case, we proceed to examine the merits of Mother's appellate contentions.

On appeal at Father's docket, Mother presents the following issues for our review:

- 14 -

A. Whether the trial court erred in its calculation of the parties' net incomes?

B. Whether the trial court erred in the calculation of child support[] owed from Mother to Father?

C. Whether the trial court erred in closing [Father's] case and reversing and then re-opening [Father's] case wherein [Mother's] expenses outweigh any monthly support owed from [Father] to [Mother]?

Mother's Brief on Father's Docket, at 10 (unnecessary capitalization omitted).

In child support cases, our standard or review is as follows:

The amount of a support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. For our purposes, an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality.

*Isralsky v. Isralsky*, 824 A.2d 1178, 1186 (Pa. Super. 2003) (internal citations and quotations omitted).

In her first issue, Mother contends that the trial court erred in calculating the parties' gross annual salaries and net incomes. Mother's Brief on Father's Docket, at 15-17. More specifically, Mother asserts that the trial court used lower, different figures for computing her annual income in its earlier findings of fact and corresponding orders on September 3, 2021 and February 15, 2022. *Id.* at 16 ("[T]he September 3, 2021 [o]rder indicated that [Mother's]

- 15 -

income was based on her salaried amount of $61,386.00[.").   She claims that "it appears that it was the [c]ourt's intent to [continue to] use the income numbers set forth in the September 3, 2021 [o]rder and that clearly is not what occurred."  *Id.* at 17; *see also generally* Mother's Brief at Mother's Docket, at 20-21 (similar arguments).

The trial court first recognized that counsel for the parties agreed upon the conference officer's initial calculation of each party's net monthly income. Trial Court Opinion, 7/8/2022, at 6.  However, as set forth above, "[c]ounsel for the parties stipulated on the record at the hearing *de novo* to [Mother's] annual gross income in the amount of $62,926.50 and [Father] earning an annual gross income of $48,000.00." *Id.*  As such, the trial court recalculated each party's net income "to be slightly higher than determined by the [c]onference [o]fficer." *Id.*

Upon review of the record, we agree with the trial court's determination and discern no abuse of discretion.  Mother stipulated to higher earnings at the later *de novo* hearing.  The trial court considered those new figures in computing gross annual salaries and net incomes for the parties.  As such, Mother is not entitled to relief on her first issue.

Next, Mother asserts that the trial court "failed to correctly calculate [Mother's] net monthly income including her mandatory deductions for retirement and union dues[.]"  Mother's Brief at Father's Docket, at 14; *see id.* at 20 ("[I]t does not appear that the appropriate deductions were made for [her] mandatory retirement and union dues."); *see also generally*

Mother's Brief at Mother's Docket, at 22 (similar arguments). Again, Mother urges this Court to utilize $61,386.00 as her gross income. Mother's Brief at Father's Docket, at 20. On this issue, the trial court recognized that Mother's "involuntary employer withholdings, along with union dues and the pension contribution, were both subtracted from her gross income by the [c]onference [o]fficer using [a] net income calculation template." Trial Court Opinion, 7/8/2022, at 4. The trial court considered those calculations. Moreover, Mother presented the trial court with extensive evidence pertaining to her mandatory employment contributions at the *de novo* hearing. N.T., 11/10/2021, at 24-27. Thus, we presume that the trial court considered these adjustments in its decision. Based upon our review, there is no evidence that the law was misapplied or overridden, or that the trial court's judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality. As such, we discern no abuse of discretion in determining Mother's net monthly income and Mother's second issue does not warrant relief.

Finally, Mother asserts that the trial court erred by ordering Father to reimburse Mother "for his share of the costs of childcare, preschool and speech [classes]". Mother's Brief at Father's Docket, at 21. She contends that the trial court should have off-set her expenses for childcare with her base support obligation because "[i]t is inequitable to have Father receive a garnished amount of child support and [Mother's] childcare, pre-K, speech and insurance expenses be reimbursed by [Father]." *Id.* at 22. She further argues that "[i]f [Father] does not pay then [Mother] has to seek relief through the [c]ourt all

while continuing to pay him support that he owes back to her." ***Id.*** Mother challenges the trial court's opinion that Father reimburse Mother for childcare related expenses because those expenses fluctuate throughout the year and are not paid by her on a regular monthly basis. ***Id.*** at 21. Instead, Mother calculates the annual amount she allegedly spends on childcare, suggests that it is the same amount she owes Father for child support, and contends that the amounts produce a complete offset. ***Id.*** at 22-23. As such, Mother argues that she is not obligated to provide Father with child support. ***Id.*** at 23; ***see also generally*** Mother's Brief at Mother's Docket, at 18-20 and 23-24 (similar arguments).

Initially, we note that Mother does not provide legal authority to support this claim. We could find this issue waived. ***See Eichman v. McKeon***, 824 A.2d 305 (Pa. Super. 2003) (failure to cite relevant legal authority constitutes waiver of the claim on appeal). Regardless, the trial court recognized that Mother's "payment of child care expenses is inconsistent and is not paid monthly, but rather by fluctuating payments for 'blocks' of time." Trial Court Opinion, 7/8/2022, at 3; ***see also id.*** at 5 (The amount of [Mother's] childcare expenses fluctuate throughout the year and are not paid by her on a regular monthly basis[.]"). The trial court found it was more prudent to order reimbursement rather than try to annualize childcare expenses because it "would simply invite unnecessary [future] support modification requests." ***Id.*** at 5. The court ultimately determined that "[b]y directing [Father] to directly reimburse [Mother] outside of [the child s]upport [o]rder is more reasonable

in view of the varying amounts inconsistently paid by her throughout the year for childcare related expenses." ***Id.***

We discern no abuse of discretion in ordering Father to reimburse Mother for his proportional share of childcare expenses rather than including childcare expenses in the computation of Mother's base child support obligation. The Support Guidelines specifically state that with regard to childcare expenses, "the trier-of-fact … shall allocate reasonable child care expenses paid by the parties, if necessary to maintain employment or appropriate education in pursuit of income." Pa.R.C.P. 1910.16-6(a)(1). The Rule further provides that "[t]he trier-of-fact may require that the obligor's share be added to the basic child support obligation, paid directly to the service provider, **or paid directly to the obligee**." Pa.R.C.P. 1910.16-6(a)(2) (emphasis added). As the Rule makes perfectly clear, the trial court was authorized to order Father to pay Mother directly for his share of childcare expenses and, therefore, it did not abuse its discretion in doing so. ***See Horwath v. DiGrazio***, 142 A.3d 877, 880 (Pa. Super. 2016) (analyzing the intent of the Supreme Court with regard to the Rules of Civil Procedure, the best indication of said intent is the plain language of a rule). As such, Mother is not entitled to relief on her final claim.

For all of the foregoing reasons, we affirm the trial court's decisions in these matters, but remand the cases for the trial court to order complete consolidation of the matters and to merge the two dockets accordingly.

Orders affirmed. Case remanded with directions. Jurisdiction relinquished.

Judge Pellegrini joins.

Judge Nichols concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/12/2023